WILLIAM M. MORGAN, trustee, *vs.* MAURICE M. WORDELL.

Bristol.    October 22, 1900. — April 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

A partnership of three was dissolved by mutual consent. Under the agreement of dissolution one of them purchased the stock on hand and continued the business. As part of the consideration he agreed to assume all debts and liabilities of the firm, and covenanted to hold the retiring partners harmless from loss on account thereof. *Held,* that a covenant of indemnity ran severally to each of the retiring partners.

A surety, who has paid a claim primarily due from a bankrupt and seeks to prove such payment against the bankrupt as subrogated to the rights of the creditor under § 57 i of the U. S. Bankruptcy Act of 1898, is subject to all the disabilities attached to the creditor whose claim he paid; and if such creditor had received a preference from the bankrupt which he had not surrendered, as required by § 57 g before any claim could be proved by him, this bars the surety from proving his claim by subrogation, although the preference was an entirely separate transaction with which the surety had nothing to do, and it cannot be objected that the adjudication against the creditor as to the preference is *res inter alios* and therefore not evidence against the surety, because the surety stands in the shoes of the creditor and for the purpose of proving his claim is the same person.

Under section 68 of the bankruptcy act, U. S. St. of July 1, 1898, in regard to set-offs and counterclaims, a liquidated mutual credit may be set off by a debtor of the bankrupt sued by the trustee in bankruptcy, notwithstanding the fact that it could not be proved in the bankruptcy proceedings. In the provision of the section above named, that a set-off shall not be allowed which is not provable against the estate, the word "provable" means provable in its nature at the time when the set-off is claimed not provable in the pending bankruptcy proceedings.

CONTRACT by a trustee in bankruptcy to recover $607 for goods sold and delivered by the bankrupt to the defendant. Writ dated May 29, 1900.

The defendant filed an answer and declaration in set-off, alleging that the bankrupt owed him $638.48 for money paid for his use and benefit.

The case was heard in the Superior Court upon the following agreed facts: The defendant Wordell was a copartner with Michael J. Dillon and Thomas C. McGuire, engaged in the dry goods business at Fall River under the firm name of Wordell, Dillon and McGuire. The partnership was dissolved by mutual consent on October 17, 1898. Dillon purchased the stock of the old firm under the agreement of dissolution, and carried on the business individually until August 10, 1899, when he became a voluntary bankrupt. The plaintiff was the trustee in bankruptcy of Dillon.

As a part of the consideration from Dillon to the retiring partners he agreed to assume all debts and liabilities of the firm, and covenanted to save the other partners harmless from loss on account thereof.

None of the creditors of the firm released the retiring partners, but all of the creditors were paid by Dillon before going into bankruptcy except three, namely, H. B. Claflin and Company, The Fall River Daily Herald Publishing Company, and the Fall River Daily Evening News, to whom were owed respectively $738.48, $40, and $58.

These three creditors, after Dillon went into bankruptcy and after the appointment of his trustee, demanded payment of each of the retiring partners, who investigated the claims and found that they were still unpaid. Thereupon the defendant Wordell, with knowledge of Dillon's adjudication as a bankrupt, and the appointment of the plaintiff as trustee, paid the Fall River Daily Herald Publishing Company and the Fall River Daily Evening News in full, and paid H. B. Claflin and Company a portion of their claim, namely, $540.48, paying in all to the three creditors, $638.48. The other partner, McGuire, at the same time, paid the balance of $198 due to H. B. Claflin and Company and each took separate receipts running to himself individually for each payment.

After the dissolution of the firm, the defendant bought goods of Dillon to the amount of $607.06, which were not paid for when Dillon went into bankruptcy. The plaintiff demanded the payment of this sum from the defendant on or before October 1, 1899, but interest was not claimed by either plaintiff or defendant, except from the date of the writ.

In November, 1899, and after his payments to H. B. Claflin and Company and the Fall River newspapers mentioned above, the defendant offered a proof of claim in Dillon's bankruptcy proceedings for the balance of $31.42, the difference between the amount owed to Dillon's estate and the amount which the defendant claimed was due to him from Dillon's estate, on account of the payments made by him to the three creditors of the partnership. This proof of claim was disallowed in the District Court of the United States by *Lowell*, J., in a decision rendered March 27, 1900, from which neither party appealed.

The following facts were to be considered only if they were admissible:

H. B. Claflin and Company offered a proof of claim in bankruptcy against Dillon amounting to $124 for goods sold to him after the dissolution of the partnership and exclusive of the $738.48 before mentioned, and this claim was disallowed, the referee finding that H. B. Claflin and Company had received a preference under the terms of the bankruptcy act, and this decision became a final judgment. Unless the facts stated in this paragraph are admissible there was no evidence in this case that H. B. Claflin and Company had received a preference.

The retiring partner McGuire owed Dillon for goods purchased after the dissolution the sum of $198.12, which was not paid at the time Dillon went into bankruptcy. The estate of Dillon was not sufficient to pay his creditors in full.

Upon the foregoing facts the Superior Court ordered judgment for the defendant; and the plaintiff appealed.

Section 68 of U. S. St. of July 1, 1898, is as follows:

"Sec. 68.    SET-OFFS AND COUNTERCLAIMS. — a In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

" b A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

The case was submitted on briefs to all the justices.

*W. M. Morgan & H. T. Richardson*, for the plaintiff.

*J. W. Cummings & C. R. Cummings*, for the defendant.

HOLMES, C. J. This is a suit by a trustee in bankruptcy against a debtor of the bankrupt. The debtor claims a set-off on the ground that since the bankruptcy he has paid debts due from a former partnership consisting of himself, the bankrupt and one McGuire, from which debts the bankrupt had covenanted to save his partners harmless. It is objected that the covenant runs to the two other partners jointly, but it is sufficiently plain that there are several covenants to each. The more serious objection is that the principal debt paid is one which has been disallowed by final judgment when offered by the creditors, H. B. Claflin and Company, for proof against the estate, on the ground that they received a preference, and that a claim offered in the defendant's name in respect of the payment also has been disallowed.

As it was assumed on both sides that the provision in § 68 b of the United States Bankruptcy Act concerning set-off is more than a rule of procedure and governs in this court as well as in the courts of the United States, we shall make the same assumption for the purposes of this case, without argument. See *Hunt* v. *Holmes*, 16 Nat. Bankr. Reg. 101, 105 ; *Partridge* v. *Insurance Co.* 15 Wall. 573, 580. We shall assume further, as a corollary, that if a set-off is to be maintained it must be brought within the words of the section referred to. Those words are: " A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate." These words are universal in form, and we do not see how a set-off can be claimed in this case outside of them.

If then the defendant claims by virtue of the rights of a quasi-

surety, (*Fisher* v. *Tifft*, 127 Mass. 313, 314,) who has paid and therefore is subrogated to the claim of a joint creditor of himself and the debtor, § 57 i, the trouble is that he has to take the claim of Claflin and Company as he finds it, and he finds it a claim which is not provable against the estate, because Claflin and Company have received preferences which have not been surrendered.   § 57 g.   It seems hard that a matter between Claflin and Company and the bankrupt, with which the defendant had nothing to do, should bar rights arising out of a payment which he was compelled to make.   But we do not feel at liberty to give the language of § 57 i other than its most natural meaning or to interpret the subrogation there provided for as a subrogation free from the disabilities attached to the creditor or as a subrogation to the creditor's rights independent of the effect of the preference upon them.   One result of such an interpretation would be to allow the claim without a surrender of the preference, contrary to § 57 g.

It is suggested that the adjudication against Claflin and Company is *res inter alios*, and there is no other evidence that they accepted a preference.   But the defendant's claim by subrogation is affected by the judgment as it is by the preference, and for the same reason:   He stands in the shoes of Claflin and Company, succeeds to their place, in the language of the Roman law, and is the same person with them for this purpose, a notion frequently recurring in the law.   Dernusson, de la Subrogation, (3d ed.) c. 1, no. 7.   Sheldon, Subrogation, § 2. 4 Massé, Droit Commercial, (2d ed.) 60, no. 2152.   D. 20, 4, 12, § 9.   D. 4, 12, 16.   See *Day* v. *Worcester, Nashua & Rochester Railroad*, 151 Mass. 302, 307, 308.

The defendant also claims a set-off by virtue of his covenant.   We assume that it has been adjudicated between the parties in the District Court that the defendant has not a claim which he could prove in his own name, and that this decision carries with it the corollary that he could not prove his claim on the covenant against the estate.   If therefore the prohibition of a set-off of a claim "which is not provable against the estate" is to be taken with simple literalness as applying to any claim that could not be proved in the existing bankruptcy proceedings, the defendant's set-off cannot be

maintained. But we are of opinion that the seemingly simple words which we have quoted must be read in the light of their history and in connection with the general provision at the beginning of § 68 for a set-off of mutual debts " or mutual credits," and that so read they interpose no obstacle to the defendant's claim.

The provision for the set-off of mutual credits is old. St. 4 & 5 Anne, c. 17, § 12. 5 Geo. II. c. 30, § 28. 46 Geo. III. c. 135, § 3. *Gibson* v. *Bell*, 1 Bing. N. C. 743, 753. *Ex parte Prescot*, 1 Atk. 230. It was adopted in the United States acts of 1800, c. 19, § 42, 1841, c. 9, § 5, and 1867, c. 176, § 20. But while the provision as to mutual credits was thought to be more extensive than that as to mutual debts, *Atkinson* v. *Elliott*, 7 T. R. 378, 380, it was held that even the broader phrase did not extend to claims which, when the moment of set-off arrived, still were wholly contingent and uncertain, such for instance as the claim upon this covenant would have been if the defendant had not yet been called upon to pay anything upon the original partnership debt. *Abbott* v. *Hicks*, 5 Bing. N. C. 578. Robson, Bankruptcy, (7th ed.) 374. But the moment when the set-off was claimed was the material moment. The defendant's claim might have been contingent at the adjudication of bankruptcy, and so not provable in the absence of special provisions such as are to be found in the later bankrupt acts in England and in the United States act of 1867, although not in the present law, and yet if it had become liquidated, as here by payment, before the defendant was sued, he was allowed without question to set it off. *Smith* v. *Hodson*, 4 T. R. 211. *Ex parte Boyle, re Shepherd*, 1 Cooke, B. L. (8th ed.) 561. *Ex parte Wagstaff*, 13 Ves. 65. *Marks* v. *Barker*, 1 Wash. C. C. 178, 181.

The limitations worked out by these decisions were expressed in the section of the act of 1867 cited above, in the words " but no set-off shall be allowed of a claim in its nature not provable against the estate." These words, as it seems to us, following the cases, referred to the nature of the claim at the moment when it was sought to set it off, not to its nature at the beginning of the pending bankruptcy proceedings, and did not prevent a set-off of a claim which was liquidated at the

later moment merely because, when the bankruptcy proceedings began, for some reason it did not admit of proof. The present statute leaves out the words "in its nature," but we can have no doubt that it was intended to convey the same idea as the longer phrase in the last preceding act, from which in all probability its words were derived. "Provable" means provable in its nature at the time when the set-off is claimed not provable in the pending bankruptcy proceedings.

The right to set off the claim when liquidated after the beginning of the bankruptcy proceedings was based upon its being a mutual credit, not upon the claim being provable, which it was not until the later bankruptcy statutes. *Russell* v. *Bell*, 8 M. & W. 277, 281. Conversely, of course the exclusion of a set-off, when the claim still was contingent and the defendant had made no payment, did not stand on the ground that the claim was not provable in the existing bankruptcy proceedings, but on the ground that it was not provable in its nature and that there was no machinery available to liquidate it. If we are right in supposing that the act of 1867 meant merely to codify a principle or rather a limitation developed by the courts, and that the words of the present act mean no more than those of the act of 1867, it follows that, although the defendant's claim could not have been proved against the estate, still it is a mutual credit and may be set off when he is sued.

*Judgment for defendant.*