BARTHOLOMEW A. BRICKLEY, trustee in bankruptcy, *vs.* PHILIP W. WRENN & others.

Suffolk. January 19, 20, 1925. — March 5, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Stockbroker. Bankruptcy,* Set-off, Preference. *Stock Exchange. Contract,* Construction, Between members of stock exchange.

The rules of the Boston and of the New York stock exchanges provide that "All contracts" between members of the exchanges "for the purchase, [or] sale . . . of securities, or . . . payment of money, whether occurring upon the floor of the Exchange or elsewhere, are contracts subject to the rules of the Exchange" and that when the insolvency of a member is announced to the exchange, "members having contracts subject to the rules of the Exchange with the member or firm shall without unnecessary delay proceed to close the same," and a rule of the Boston exchange requires a member owing a balance to the insolvent member to pay such balance within five days to the treasurer. A member of both exchanges, who owed another such

member a large sum on overdue notes and also on longs and shorts of a marginal account, the note accounts and the margin accounts being kept separate on the creditor's books, filed a petition in bankruptcy and was declared insolvent on the exchanges. The creditor proceeded as soon as possible to close out the margin account and apply toward payment of the notes a balance realized by the closing of the margin accounts. The trustee in bankruptcy of the debtor broker brought an action against the creditor broker to recover the entire amount of the balance which the creditor had applied toward the payment of the notes. *Held,* that

(1) Both the stockbrokers were bound by the rules of the stock exchanges, which became a part of the contracts between them;

(2) The transactions between the brokers on the margin accounts were not one contract, each transaction for the sale or purchase of stock being a separate contract; and the rules required the closing, in the circumstances, of all the contracts, not merely the selling of an amount of securities necessary to cover the sum which the debtor owed to the creditor on the accounts themselves;

(3) The creditor had the right to set off against the overdue notes his obligation to the debtor on the margin account;

(4) There was no preference under the national bankruptcy act;

(5) If the defendant held collateral security for the overdue notes, he was not obliged to realize on the collateral before enforcing the principal debt in the manner in which he enforced it.

CONTRACT OR TORT, by the trustee in bankruptcy of Earnest E. Smith, Alfred S. Dabney, and Nathaniel W. Niles, copartners doing business as Earnest E. Smith and Company, against several persons comprising the firm of Wrenn Brothers and Company, with the declaration described in the opinion. Writ dated July 10, 1922.

In the Superior Court, the action was heard by *Qua,* J., without a jury. Material evidence and the contentions by the plaintiff in requests by him are described in the opinion. The defendants asked for and the judge refused the following rulings:

"14. On the authorized announcement of the insolvency of Earnest E. Smith and Company on the stock exchange, the defendants' right and duty was to close the entire account by purchase and sale."

"18. The notes of Earnest E. Smith and Company for $150,000 and interest were contracts subject to the constitution and rules of the exchange."

"19. On the authorized announcement of the insolvency of Earnest E. Smith and Company on the exchange, defend-

ants were entitled to close out these contracts by applying money credits of the debtors."

There was a finding for the defendants. Both parties alleged exceptions.

*H. D. McLellan,* (*C. P. Curtis, Jr.,* & *R. C. Curtis* with him,) for the plaintiff.

*E. F. McClennen,* for the defendants.

CARROLL, J.   Earnest E. Smith and Company, hereinafter called Smith, and the defendants were stockbrokers. The plaintiff is Smith's trustee in bankruptcy. The defendants' firm, as well as Smith's, each had members who were members of the stock exchanges in Boston and in New York. Smith was insolvent January 17, 1921; the defendants had knowledge of this fact.   January 18, Smith filed a voluntary petition in bankruptcy in the United States District Court, in Boston.   On that date he owed the defendants on overdue promissory notes for money borrowed, $150,019.06; he also owed the defendants $307,699.34 for stock purchased on margin account, called long stocks. On the same account he owed the defendants $100,750.30 for stock sold and delivered for Smith, which he had not furnished; these were known as shorts, the sum of $100,750.30 being the price paid to cover the shorts.   The indebtedness of Smith was further increased by taxes and other items in the sum of $2,543.32, making the total indebtedness on the margin account $410,-992.96.   Prior to the close of business, January 17, the defendants kept the $150,019.06 loan on one account and the purchases and sales of stock on another account which showed a debit balance of $307,699.34, as the shorts had not at that time been covered.

On the morning of January 18, 1921, the insolvency of Smith was announced on the floors of the New York and Boston stock exchanges, shortly after their opening. The defendants proceeded, as soon as possible, to close out the margin account of Smith by selling the long stocks and buying the shorts. They also transferred to the margin account the note account, as found by the trial judge, by entering on the note account a credit for the balance due from Smith, and charging Smith on the margin account with a similar sum.

The first two counts of the declaration are in contract, the first being for money had and received as "specified in the second count;" the second alleging that the defendants applied the money received for Smith's stock exchange account to the payment of the notes of $150,019.06, without first resorting to the collateral for this loan; that this application was, in effect, to enable the defendants to obtain a greater percentage of their debt than other creditors. The third count is in tort, the plaintiff alleging in substance that the defendants had no right to continue to dispose of Smith's stocks after the defendants received sufficient proceeds to pay the indebtedness of Smith on the margin account, and had bought the stocks which Smith was under contract to deliver to the defendants; that the defendants converted the stocks disposed of in excess of the margin indebtedness. The fourth count also averred a conversion of the stocks sold in excess of the margin account.

The trial judge found for the defendants but refused certain requests made by them, to the effect that the defendants, according to the rules of the stock exchange, had the right to close the entire account of Smith by purchase and sale; that Smith's notes of $150,000, with interest, were contracts subject to the constitution and rules of the stock exchange.

The contention of the plaintiff, briefly stated, is that the defendants had no right to dispose of Smith's stock in excess of the amount due on the long and short stocks in the margin account; and that the sum of $117,810.11 and interest, this being the sum received after Smith's shorts had been covered and his margin debt paid, could not be applied to the $150,000 loan, and that the defendants could not make this set-off.

The rules of the stock exchanges of New York and Boston, of which Smith's firm and the defendants' firm were members, provided that "All contracts" between members of the exchanges, "for the purchase, [or] sale . . . of securities, or . . . payment of money, whether occurring upon the floor of the Exchange or elsewhere, are contracts subject to the rules of the Exchange." Another rule provided that when the insolvency of a member is announced to the exchange, "members having contracts subject to the rules of the Ex-

change with the member or firm shall without unnecessary
delay proceed to close the same." If the securities quoted
on the exchanges are involved in the contract, "the closing
must be in the Exchange, either officially by the Chairman,
or by personal purchase or sale." Smith and the defendants
were bound by these rules. They were a part of their con-
tracts with each other. See *Furber* v. *Dane*, 203 Mass. 108.
When the insolvency of Smith was announced on the floors of
the New York and Boston exchanges January 18, it was the
duty of the defendants to close all their contracts with
Smith. The transactions between them on the margin
account were not one contract. Each transaction for the
sale or purchase of stock was a separate contract, and the
rule required the closing of all contracts; not merely the sell-
ing of the amount of stock necessary to cover the sum Smith
owed the defendants on the account. Whatever may have
been the reasons for the rule, whether it was the protection
of the insolvent's creditors, to stop further speculation, or to
facilitate the winding up of the debtor's affairs and the settle-
ment of all accounts between members according to the
method of the stock exchange, the rule did require that all of
the debtor's contracts with another member should be closed,
and the contract for long stock could not be closed within
the meaning of that term, until the stock had been appropri-
ated and delivered to the purchaser, or had been sold.

Another rule of the Boston exchange required a member
owing a balance to the insolvent member to pay such bal-
ance within five days to the treasurer. Contracts between
members were to be concluded "without unnecessary delay,"
and they could not be closed until cash was realized, or the
contracts had been converted into some definite form of
indebtedness, so that the cash could be used by the exchange,
in accordance with its rules, and to adjust the remaining
debts or credits of the insolvent member. The closing of
the contracts did not mean that sufficient stock should be
sold to cover the indebtedness of Smith on the margin ac-
count. The defendants had the right under the rule govern-
ing their contracts with Smith, to reduce the contracts into
money and to clean up all the contracts and close them.

The defendants had the right to set off against the overdue notes their obligation to Smith on the margin account. In this Commonwealth a defendant may allege in defence, any facts which would entitle him in equity to be absolutely relieved against the plaintiff's claim. G. L. c. 231, § 31; and this equitable right is not limited to a set-off permitted at law. *Cromwell* v. *Parsons,* 219 Mass. 299. See *Phelps* v. *Rice,* 10 Met. 128; *Morgan* v. *Wordell,* 178 Mass. 350, 355.

The defendants' notes were overdue. The debt was provable when the bankruptcy proceedings began, and could be set off. *Morgan* v. *Wordell, supra. Studley* v. *Boylston National Bank,* 229 U. S. 523. The set-off could be made by the defendants as well as by the bankruptcy court. ". . . the defendant, to avoid a circuity of action, may interpose his mutual claim by way of defence . . . . Such counterclaims can be asserted as a defense or by the voluntary act of the parties, because it is grounded on the absurdity of making A pay B when B owes A. If this set-off of mutual debts has been lawfully made by the parties before the petition is filed, there is no necessity of the Trustee doing so. If it has not been done by the parties, then, under command of the statute, it must be done by the Trustee. But there is nothing in § 68a which prevents the parties from voluntarily doing, before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted." *Studley* v. *Boylston National Bank, supra,* page 528. By § 68a of the bankruptcy statute, mutual debts and mutual credits may be set off against each other. By § 1, paragraph (11), debts include any debt, demand or claim provable in bankruptcy. By § 63 (4) claims provable in bankruptcy comprise those "founded upon an open account, or upon a contract expressed or implied," including such as are unliquidated but capable of liquidation. A claim against a broker, growing out of a marginal account, is a provable claim. *Crawford* v. *Burke,* 195 U. S. 176, 187. No trust existed between Smith and the defendants. Their relation was purely contractual. The title to the stocks bought by the defendants and carried in the margin account, belonged to them. The title was not

in Smith. *Crehan* v. *Megargel*, 235 Mass. 279. *Brown* v. *Rushton*, 223 Mass. 80. Cases where the pledgee violates the terms of the pledge, or there is a breach of trust, have no application to the case at bar.

The defendants had the right to close all of Smith's contracts under the rules of the stock exchange, and also had the right to set off against the notes the proceeds of the margin account by applying the proceeds of the account to the notes. We have not, therefore, considered it necessary to discuss the cases relied on by the plaintiff, dealing with the question of set-off. The defendants did not hold any stocks of Smith on the margin account, in pledge or under a power of sale. See *Tallman* v. *New Bedford Five Cents Savings Bank*, 138 Mass. 330. *Brown* v. *New Bedford Institution for Savings*, 137 Mass. 262. We find nothing in G. L. c. 137, § 4, in conflict with this conclusion. In the view which we take of this case, it is not important to pass on the question whether the plaintiff, in any event under the pleadings, could recover under the contract counts, the defendants contending that no money was received by the defendants to Smith's use. See *Hawks* v. *Hawks*, 124 Mass. 457. Nor is it necessary to consider the question of the plaintiff's right to recover upon the counts in tort, based on a conversion of the plaintiff's property. See *Crehan* v. *Megargel, supra. Rice* v. *Winslow*, 180 Mass. 500, 502. There was no preference under the bankruptcy statute. The judge was right in ruling that a valid set-off was no preference. None of the debtor's property was delivered to the creditor. "To constitute a preferential transfer within the meaning of the bankruptcy act there must be a parting with the bankrupt's property for the benefit of the creditor and a consequent diminution of the bankrupt's estate." *Continental & Commercial Trust & Savings Bank* v. *Chicago Title & Trust Co.* 229 U. S. 435, 443. See *Morgan* v. *Wordell, supra. King* v. *Cram*, 185 Mass. 103, 104.

As we construe the record, it was agreed that the stocks held as collateral for the overdue notes "were not to be considered in the determination of this controversy." Even if we are wrong in this construction, the defendants were not

obliged to realize on the collateral before enforcing the principal debt. *Real Estate & Building Co.* v. *Tufts,* 127 Mass. 391. *Burtis* v. *Bradford,* 122 Mass. 129.

It follows that the defendants' exceptions, to the refusal to give their requests numbered 14 and 19, must be sustained. The plaintiff's exceptions are overruled. Judgment for the defendants is to stand.

*So ordered.*