Max M. HAYDEN, Trustee, etc., Appellant,

v.

STANDARD ACCIDENT INSURANCE COMPANY, Appellee.

No. 17989.

United States Court of Appeals
Ninth Circuit.
April 10, 1963.

Robert A. Haughwout, Stockton, Cal., for appellant.

Bohnert, Davis & McCarthy, Gerald R. Knecht, and Thomas E. Davis, San Francisco, Cal., for appellee.

Before ORR, BARNES and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

This appeal is from an order of the United States District Court, Southern District of California, affirming an order of a referee in bankruptcy. Jurisdiction is conferred on this court under the provisions of 11 U.S.C. § 47, sub. a.

The facts are not in dispute. On or about November 25, 1959, appellee became surety upon a cattle dealer's bond in the penal sum of $20,000 with Forrest Dale McCulloch, bankrupt herein, as the principal thereon. As a part of the transaction in which appellee became surety McCulloch agreed in writing to "indemnify and save the surety harmless from demands, losses, costs, damages and expenses" which the surety might incur by reason of the issuance of the bond, McCulloch was adjudicated bankrupt on December 28, 1960. Prior thereto and on or about August 26, 1960, Valley Livestock Marketing Association had commenced an action against McCulloch for the recovery of the purchase price of cattle purchased by McCulloch, and against appellee for the recovery of the penal amount of the bond in the sum of $20,000. On June 13, 1961, the court ordered the discharge of appellee from the action on condition of its payment into court of the said penal sum of $20,000. Appellee paid the $20,000 into court and the court distributed it to the two creditors of the bankrupt in proportion to their respective claims. Valley Livestock received $16,342, and another creditor, Sig Ellingson, received $3,658.

Prior to receiving the pro rata payments from the $20,000 deposited by appellee in the action, Valley Livestock and Ellingson had filed general unsecured claims against the bankrupt estate in the full amount of bankrupt's indebtedness to them. Valley Livestock's claim totaling $27,821.30 and Ellingson's claim totaling $6,229.57. The trustee for the bankrupt, appellant herein, objected to these two claims upon the ground that the moneys received from appellee in partial satisfaction thereof constituted voidable preferences. The referee ruled that such partial payments did not constitute voidable preferences, allowed the claims in their total amounts, and ruled that they would be entitled to share in dividends on the full amounts thereof until they had been satisfied in full from all sources.

On or about July 29, 1960, and prior to the adjudication of bankruptcy, the bankrupt had presented to appellee as insurer a claim in the sum of $5,100 for damages suffered by the bankrupt by

reason of loss by fire of a yacht owned by him and insured by appellee. On the date of the adjudication of bankruptcy, appellee had not paid the claim of $5,100 to bankrupt.

On June 22, 1961, after appellee had paid into court the sum of $20,000, appellee filed an unsecured claim in the bankruptcy proceeding in the sum of $14,900 on the basis of its indemnification agreement with the bankrupt and recognizing as an offset against the $20,000 payment, the claim of the bankrupt in the sum of $5,100. The following was stated in the claim:

> "There are no setoffs, or counterclaims to said debt, except as follows: a setoff against said sum of $20,000 is recognized and allowed by Standard (appellee) to bankrupt· in the amount of $5100 as the result of a claim heretofore made by bankrupt against Standard in said amount upon a policy of yacht insurance executed by Standard insuring a vessel owned by bankrupt; after deducting said offset, the amount due to Standard from bankrupt is the sum of $14,900."

Appellant objected to appellee's claim on the ground that appellee received a voidable preference in the amount of $5,100 and had not offered to surrender this amount to appellant. The referee overruled this objection and held that appellee had a lawful right to offset its indebtedness to bankrupt in the sum of $5,100. The referee also held that the appellee had a provable claim against the bankrupt estate in the sum of $14,900 based upon the written agreement of in-

demnity theretofore executed by bankrupt. Appellee's claim in the full amount of $14,900 was allowed by the referee, but it was stipulated and the referee so ordered that appellee should not participate in dividends to be paid by the trustee out of the bankrupt estate until the Valley Livestock and the Ellingson claims had been satisfied in full from all sources.

Appellant petitioned the district court for a review of the referee's order. After a hearing the district court adopted the findings of the referee and affirmed his order. Appellant's appeal to this court is from the affirmance of the referee's order, "which order allowed the claim of respondent Standard Accident Insurance Company and allowed said respondent to retain an indebtedness of $5100 owing to the bankrupt's estate as a set-off expressly asserted in said claim so allowed."

The issue on this appeal is whether appellee was entitled to set off its claim for indemnification against the $5,100 owed to the bankrupt under the yacht insurance policy.

The right to set off "mutual debts or credits" between the estate of a bankrupt and a creditor is governed by section 68 of the Bankruptcy Act, 11 U.S.C. § 108.[1] Under this statute a "set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate" and allowable under section 57, sub. g of the Act (11 U.S.C. § 93, sub. g).[2] Appellant contends that appellee did not have a "provable" claim against the bankrupt's estate because of section 57, sub. i of the

---

1. 11 U.S.C. § 108 provides in pertinent part as follows:

   "§ 108. Set-offs and counterclaims

   "a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

   "b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable

against the estate and allowable under subdivision g of section 93 of this title;.
   * * *."

2. Section 57, sub. g provides that "The claims of creditors who have received or acquired preferences, liens, conveyances,. transfers, assignments or encumbrances,. void or voidable under this title, shall not. be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."

Act (11 U.S.C. § 93, sub. i), which on the date of adjudication read as follows:

"Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove and file such claim, such person may do so in the creditor's name and, if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor."

It is the position of appellant that the above-quoted provision was enacted for the purpose of avoiding double proof in bankruptcy of a single debt and that therefore a surety, who has paid only a portion of the principal debt, cannot prove his claim for indemnification in his own name and is not entitled to dividends from the estate until the principal creditor has received full payment of his claim; [3] consequently appellant contends that the surety's claim cannot be considered "provable" for the purpose of section 68 of the Act. In the instant case it has been stipulated that appellee shall not share in the dividends until the principal creditors are paid in full. The question is whether under the provisions of section 57, sub. i appellee is also precluded from setting off its claim for indemnification against its own debt.

The following question was before the Supreme Court in Williams v. United States Fidelity & Guaranty Co.: [4]

"Does a discharge in bankruptcy acquit an express obligation of the principal to indemnify his surety against loss by reason of their joint bond conditioned to secure his faithful performance of a building contract broken prior to the bankruptcy when the surety paid the consequent damage thereafter?"

After considering, *inter alia*, the provisions of section 57, sub. i, the Court concluded in effect that the surety's claim for indemnification was a provable debt which was dischargeable in bankruptcy. The Court stated: [5]

"Within the intendment of the law provable debts include all liabilities of the bankrupt founded on contract, express or implied, which at the time of the bankruptcy were fixed in amount or susceptible of liquidation. [citations]. It provides complete protection and an ample remedy in behalf of the surety upon any such obligation. He may pay it off and be subrogated to the rights of the creditor; if the creditor fails to present the claim for allowance against the estate he may prove it; and in any event he has abundant power by resort to the court or otherwise to require application of its full *pro rata* part of the bankrupt's estate to the principal debt. To the extent of such distribution the obligation of the bankrupt to the surety will be satisfied. Although, unlike the act of 1867, the present one contains no express provision permitting proof of contingent claims, it does in substance afford the surety on a liability susceptible of liquidation the same relief possible under the earlier act, i. e. application to the principal debt of all dividends declared out of the estate [citation]. And as the surety thus either shares or enjoys an opportunity to share in the principal's estate, we think

---

3. Section 57, sub. i was recently amended to expressly provide that the surety is not entitled to participate in dividends of the bankrupt's estate until the aggregate of the surety's part payment to the principal creditor and the dividends the principal creditor receives from the estate total 100% of the principal creditor's claim. (Pub.L. 87–681, Sept. 25, 1962, 76 Stat. 570). The legislative history of the amendment reveals that although it was recognized that the language of section 57, sub. i prior to the amendment did not compel this result, it was felt that the amendment did codify the prevailing or existing view. (1962 U.S.Code Congressional and Administrative News, p. 2605.)

4. 236 U.S. 549, 552, 35 S.Ct. 289, 59 L. Ed. 713 (1915).

5. Id. at pp. 556–557, 35 S.Ct. at 290–291.

the discharge of the latter acquits the obligation between them incident to the relationship. [citations]."

As a claim that is dischargeable in bankruptcy, we can see no valid reason why a surety's claim for indemnification cannot be considered provable in nature [5a] for the purpose of the set-off provisions of section 68. The language of section 57, sub. i does not militate against this result. To say (under appellant's interpretation of section 57, sub. i) that a surety is not entitled to share in the dividends of the estate until the principal creditor receives full payment of his claim is different from saying that the surety is not entitled to use his claim against the bankrupt for the limited purpose of setting it off against his own debt to the bankrupt. We recognize that the principal creditor's recovery might be that much greater if the surety were required to pay his debt into the bankrupt's estate. If such a result had been desired, however, either section 68 or section 57, sub. i could easily have been amended to provide that a surety's claim for indemnification was not to be considered provable in nature for the purpose of the set-off provisions. In the absence of legislation so providing, we feel bound to hold that appellee's claim for indemnification was a "provable" claim within the meaning of that term as used in section 68.

An additional requirement of section 68 is that there be mutual debts between the estate of the bankrupt and the creditor. We feel that mutuality of debts clearly existed between appellee and the bankrupt on the date of the adjudication. Prior to the adjudication, the bankrupt had defaulted and Valley Livestock had by reason of the default filed an action against appellee.[6] Similarly, prior to the adjudication the bankrupt had made a claim against appellee for loss under the yacht policy previously issued by appellee to the bankrupt. There thus existed at the time of bankruptcy a demand against appellee for the principal sum of its bond and a claim by the bankrupt against appellee for the payment under the yacht insurance policy. The right to a set-off has been recognized by the courts even though payment is not made until after the adjudication.[7]

We hold that the order of the district court allowing appellee a set-off was not erroneous.[8]

The order of the district court is affirmed.

5a. See Collier on Bankruptcy, Vol. 4, Par. 68.08 (14th Ed.).

6. See United States Fidelity & Guaranty Co. v. Ryan, 124 Wash. 329, 214 P. 433, 39 A.L.R. 109 (1923) in which it was held that a surety liable for the default of his bankrupt principal becomes a creditor of such principal "in any event not later than the default of his principal, which fixes the liability upon him as surety"; Kilpatrick v. United States Fidelity & Guaranty Co., 228 F. 587 (5th Cir. 1916) where it was held that the "indebtedness of a bankrupt principal to his surety, who subsequently discharges the obligation in whole or in part, takes effect from the date the surety executed the instrument which binds him, and that in the event the surety discharges the debt of the principal, after the principal's adjudication as a bankrupt, the surety is indemnified, in that he has a provable and likewise a dischargeable debt, which had its origin prior to the adjudication.".

7. See, e. g., In re Dillon, 100 F. 627 (D.C. Mass.1900); Morgan v. Wordell, 178 Mass. 350, 59 N.E. 1037, 55 L.R.A. 33 (1901); Wagner v. Burnham, 224 Pa. 586, 73 A. 990 (1909); Marks v. Barker, Fed.Cas.No.9096; Norfolk & W. Ry. Co. v. Graham, 145 F. 809 (4th Cir. 1906). But see Collier on Bankruptcy, Vol. 4, pp. 740–741 (14th Ed.) where a contrary position is taken. An examination of Collier's citations reveals, however, that they do not support his position.

8. In view of our holding in this case, it is unnecessary to discuss the merits of appellant's claim for affirmative relief nor appellee's contention that it had not consented to the exercise of summary jurisdiction by the referee.