**In the matter of Stephen Craig WALLER, Debtor.**

**John R. STONITSCH, trustee in bankruptcy, Plaintiff,**

**v.**

**Charles M. WALLER, Defendant.**

**Bankruptcy No. 77–01107–B–W–3.**

United States Bankruptcy Court, W.D. Missouri, W.D.

March 31, 1983.

John R. Stonitsch, Kansas City, Mo., for plaintiff.

Ronald J. Stites, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER $3,950.41 FROM DEFENDANT

DENNIS J. STEWART, Bankruptcy Judge.

In its initial determination of this action which is now again before the bankruptcy court, this court held that, according to an agreement between the bankrupt and the defendant, the plaintiff trustee in bankruptcy (the bankrupt's successor in interest) had a right to half of the dental equipment of the former dental partnership between the bankrupt and defendant, plus certain other monies to which the bankrupt was entitled upon dissolution of the partnership under the terms of the partnership agreement.[1] The defendant appealed from that judgment to the district court, which in substance reversed the holding that any interest in the dental equipment should be turned over to the trustee in bankruptcy but initially upheld this court's ruling that the monies should be paid to the trustee in accordance with the express terms of the contract between the bankrupt and the defendant. In this regard, the district court concluded as follows:

"Charles Waller does not dispute that he owed the Bankrupt $5,000 as a result of the disassociation in December 1974 ....
(T)he Bankruptcy Judge correctly determined that Charles Waller was entitled to a set-off of $1,049.59 ... Charles Waller argues that he should be permitted to set-off against his $5,000 obligation to the estate the difference between the balance owing on the loan and any security held by the bank on the theory that he is obligated the pay that amount under his guaranty dated March 29, 1974.

"The availability of a set-off is governed by Sec. 68 of the Bankruptcy Act, 11 U.S.C. section 108, which states in part as follows:

'A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision (g) of section 57 of this Act (section 93(g) of this title).'"

"Thus, for defendant's obligation to South Side Bank to qualify as a set-off, it

---

1. The judgment of the bankruptcy court was phrased in the alternative and was to the effect that the defendant should turn over to the trustee in bankruptcy either the sum of $4,950.41 or the dental equipment securing the bankrupt's indebtedness to the South Side Bank, as to which the security interest had not been perfected as against the trustee in bankruptcy.

must be provable in bankruptcy. Although it is stipulated that Charles Waller guaranteed the Bankrupt's obligation to South Side Bank ... the record on appeal does not indicate that South Side Bank filed a claim in the Bankruptcy Court for any amount owing on the $17,847.60 loan made to Bankrupt.

"11 U.S.C. Sec. 93(i) provides as follows:

Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove and file such claim, such person may do so in the creditor's name and, if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor.'

"Nowhere does the record indicate that Charles Waller, in the absence of a bank claim, filed a claim in the bank's name. His liability to pay the Bankrupt's debt is only a contingent liability; he may never be required to pay under his guaranty. Section 93(i) provides for subrogation only to the extent that the individual undertaking has been discharged. Any claim that the defendant has was unliquidated at the time of the hearing, and the Court has not been advised that it has since been liquidated."

The defendant Charles Waller then moved the district court, in accordance with the provisions of Rule 59, F.R.Civ.P., to reconsider and alter or amend the judgment thus rendered on the ground that he had in fact made payments to the Southside Bank on the dental equipment which had not been subtracted from the monies to be paid to the trustee. The motion of the defendant in this regard read as follows:

"Attached to these suggestions is a copy of the settlement papers on the case of *Southside Bank v. Charles and Anna Waller,* Case No. CV79–2968, in Jackson County Circuit Court.

"Under the terms of this settlement agreement, Mr. Waller has paid Southside Bank $4,000.00 and received satisfaction. He has also paid defendant's costs in the amount of $104.84.

"Pursuant to page 8 of this Court's decision referred to herein and the cases cited in that section of the brief previously filed by defendant and referred to by the Court, this defendant appellee respectfully requests this Court to reconsider its order and to allow a $4,104.84 set off against trustee's claim."

The "release" executed by the South Side Bank of Kansas City which is attached to that motion is as follows:

"WHEREAS, The South Side Bank of Kansas City (hereinafter the Bank) has brought an action in the Circuit Court of Jackson County, Missouri, Case No. CV79–2968, Count II of which cause is now pending against Charles M. Waller and Anna M. Waller for breach of contracts of guaranty; and

"WHEREAS, it has been agreed between them that Charles M. Waller and Anna M. Waller should pay to the Bank the sum of $6,500.00 and court costs in the aforesaid suit, to compound all claims against them for damages and expenses suffered and incurred by the Bank on account of said breach of guaranty and in and about the prosecution of said cause, and that upon the payment of said sums, said action shall be dismissed with prejudice and the Bank's claims for such damages and expenses shall be fully compromised and settled.

"NOW, THEREFORE, in consideration of the sum of $6,500.00 so paid by Charles M. Waller and Anna M. Waller to the Bank, receipt of which is hereby acknowledged, the Bank hereby releases and discharges Charles M. Waller and Anna M. Waller from all causes, claims and demands whatsoever which it now has or at any time hereafter may have or, but for the execution of these presents, could or might have had against them for or by reason of or in respect of said breach of contracts of guaranty, and said Bank hereby agrees that upon payment of court costs, all proceedings in said cause shall forthwith be stayed and that it will, at the cost of Charles M. and Anna M. Waller, dismiss said Count II with prejudice.

"The Bank further agrees that certain personal property now the subject of suit in the United States Bankruptcy Court for the Western District of Missouri, Western Division, Case No. 77–01107–B–W–3 entitled 'In the Matter of Stephen Craig Waller, Bankrupt. John R. Stonitsch, Trustee in Bankruptcy, Plaintiff, vs. Charles M. Waller, Defendant' shall be subject to such disposition as may be finally made by said Bankruptcy Court, and the Bank waives all right of levy and all claims and demands of every kind against all of said personal property which may be adjudged to be the property of Charles M. Waller."

On the basis of the motion for reconsideration, the district court remanded the action to the bankruptcy court for additional findings of fact with the following considerations and instructions:

"On appeal Charles Waller argued that he should be permitted to set-off against his $5,000 obligation to the estate the difference between the balance owing on Stephen Waller's loan from South Side Bank and any security held by the bank on the theory that he is obligated to pay that amount under his guaranty dated March 29, 1974. At page 8, in discussing that argument, th(is) Court stated that 'the record on appeal does not indicate that Charles Waller had paid any amount to South Side Bank on his guaranty prior to the hearing (in the Bankruptcy Court).' Th(is) Court also stated that '(h)is liability to pay the Bankrupt's debt is only a contingent liability; he may never be required to pay under the guaranty' and '(a)ny claim that defendant has was unliquidated at the time of the hearing, and the Court has not been advised that it has since been liquidated.'

"In his suggestions in opposition to reconsideration the trustee stated that 'a claim was filed by the South Side Bank, which, under the provisions of Section 57i of the Bankruptcy Act, obviates the claim of the defendant.' ... At page 8 of this Court's order it was stated that the 'record (does not) indicate that South Side Bank filed a claim in the Bankruptcy Court for any amount owing on the $17,847.60 loan made to bankrupt,' and that '(n)owhere does the record indicate that Charles Waller, in the absence of a bank claim, filed a claim in the bank's name.'

"Because the record on appeal supports this Court's order, Charles Waller's motion for reconsideration will be denied. In order that the facts presented and asserted in connection with the motion for reconsideration may be taken into account, however, the order of March 22, 1982, will be modified by the addition of the following:

... This action is remanded to the Bankruptcy Court for the limited purpose of considering Charles Waller's assertion that he has been required to pay the South Side Bank pursuant to his guaranty, the Trustee's assertion that the South Side Bank filed a claim in the Bankruptcy Court for the amount owing on its loan to Bankrupt, and any application of such facts, if established, to the disposition of this action."

## II

■ The bankruptcy court, pursuant to the order of remand, of which it became aware only several months after it had been filed,[2] has examined the files and records in this bankruptcy case. They show that the creditor in whose favor the guaranteed debt runs, the South Side Bank, has filed a claim for the balance due as of the date of bankruptcy on that debt.[3] The relevant and

---

2. The order of remand was filed on May 19, 1982. No individual copy of it was transmitted to the office of the bankruptcy judge. Only in September 1982, when the appeal file was returned to the office of the bankruptcy clerk, was the court of bankruptcy made officially aware of the remand and its duties under the order of remand.

3. The files and records in this case show that the South Side Bank filed a claim on August 30, 1977, in the amount of $11,805.50. It was amended on July 24, 1978, to state that the sum of $8923.80 was "at the time of the filing of the petition initiating this case, (the bankrupt's indebtedness)."

governing provisions of the Bankruptcy Act prohibit the filing of a claim by the surety or guarantor when the creditor has filed a claim for the balance due. See section 57i of the Bankruptcy Act to the following effect:

> "Whenever a creditor whose claim against a bankrupt estate is secured, in whole or in part, by the individual undertaking of a person fails to prove and file that claim, that person may do so in the creditor's name, and he shall be subrogated to the rights of the creditor, whether the claim has been filed by the creditor or by him in the creditor's name, to the extent that he discharges the undertaking except that in absence of an agreement to the contrary, he shall not be entitled to any dividend until the amount paid to the creditor on the undertaking plus the dividends paid to the creditor from the bankrupt estate on the claim equal the amount of the entire claim of the creditor. Any excess received by the creditor shall be held by him in trust for such person."

See also 3 Collier on Bankruptcy para. 57.-21(4), p. 376 (1977), to the following effect:

> "A secondary debtor is not released by the discharge in bankruptcy of the principal debtor. Thus his interest to see the creditor's claim share in the estate and thereby to alleviate his own burden is equally strong whether he already paid the creditor or not. His right under section 57i and now under Rule 304 to prove the creditor's claim in the creditor's name (and if the creditor's name is unknown, in his own) does not depend on any payment on his part. *The only statutory prerequisite is the failure of the creditor to file a proof of claim ...*" (Emphasis added.)

The obvious and express purpose of this requirement is to prevent the exaction of double payment from the bankruptcy estate on the same debt, at the expense of the claims of the other creditors. "The purpose of Section 57(i) ... carried forward in B.R. 304 is to assist the guarantor in securing an enforcement of the bankrupt's duty to exonerate a surety as far as he can; protect the bankrupt-principal from the surety's claim for reimbursement ...; and *provide a technical procedural device to insure there will be but a single charge against the estate on what is in reality a single debt.*" *In re Investors Equity, Inc.,* 5 Bankr.Ct.Dec. 392, 395 (Bkrtcy.S.D. Iowa 1979) (Emphasis added.). To ensure that this purpose is fulfilled, under the literal provisions of section 57i, *supra,* the surety who has not paid the creditor's claim in full prior to the date of bankruptcy is not regarded as a creditor of the estate and is not permitted to file a claim against it. His rights are limited to claims against the creditor for any amounts which have been paid that creditor out of the estate and which duplicate payments which he has made to the creditor.

■ In the case at bar, according to the papers submitted in connection with the defendant's motion for reconsideration in the district court, the defendant has not paid the claim in full so that the creditor no longer asserts it in his own right in the bankruptcy court. The settlement for the sum of $6,500 does not purport to pay the claim of the creditor in full and the "compromise" and settlement of the claim does not effect any discharge of the indebtedness of the estate in bankruptcy to the creditor South Side State Bank.[4] Accordingly, under the foregoing authorities, these papers do not demonstrate that the defendant is entitled to share in any dividend from the bankruptcy estate and cannot therefore claim the status of a claimant, under section 57i, against the bankruptcy estate. "Section 57i specifically denies ... any ... surety or guarantor the right to share or

---

4. As can be noted from the foregoing text, on page 3 of this memorandum, the defendant's contention that he has now paid $4,000.00 of the outstanding indebtedness to the South Side Bank cannot, without more, amount to a contention that he has paid the liability in full. See note 3, *supra.* Even if the statements in his motion for reconsideration must be interpreted as stating that he has now paid the entire $6,500.00 for which the state court action was "compromised," they do not amount to a contention of full payment of the liability to South Side Bank.

participate in the distribution of the bankrupt's property unless he actually discharges the debt, in whole or in part . . . Then . . . any such surety or guarantor 'shall not be entitled to any dividend until the amount paid to the creditor or the undertaking plus the dividends paid to the creditor from the bankrupt estate on the claim equal the amount of the entire claim of the debtor.' . . . Thus (the surety or guarantor) cannot share or participate in the distribution of the bankrupt's property until after all other creditors whose claims are secured by the alleged guaranty are made whole." *In re Beasley-Gilbert's, Inc.*, 285 F.Supp. 359, 362 (S.D.Ohio 1968). The offers of proof now made by the defendant, as noted above, are not to the effect that the creditor has now been made whole.

Even, however, if the defendant could now claim full payment of the outstanding debt to the creditor, his right to share in the dividends of the estate does not make him a proper creditor or claimant against the bankrupt. See *In re Beasley-Gilbert's, Inc.*, supra, at 362, to the following effect:

"The statute *expressly* provides that a guarantor must file his claim in the 'creditor's name.' The statute does not convert the creditor's claim into a guarantor's personal claim. Normally a surety or guarantor has against the principal debtor an express or implied personal claim to be indemnified or reimbursed. However, Section 57i denies the right and confines the surety or guarantor to the proof of the *creditor's* claim in the *creditor's* name."

Consequently, even if the surety or guarantor fully pays the creditor after the date of bankruptcy [5], it cannot be said that the element of mutuality, necessary to a setoff under section 68a of the Bankruptcy Act, exists, for the surety or guarantor, as of the date of bankruptcy, is not regarded, by reason of section 57i, as a creditor of the bankrupt. The fact that he may later at some point become entitled to dividends from the estate is irrelevant. "Section 68a comprehends only 'mutual debts or mutual credits' and . . . claims owed by or to the bankrupt prior to bankruptcy cannot be set off against claims owed by or to the bankrupt's estate (as represented by the receiver or trustee) and arising after bankruptcy. This is because the element of mutuality of obligation is lacking." 4 Collier on Bankruptcy para. 68.10(1), p. 895 (1978). Therefore, it is ordinarily held that a surety or guarantor cannot be entitled to setoff unless he fully pays the creditor prior to the date of bankruptcy. See 4 Collier on Bankruptcy para. 68.11, pp. 901–902 (1978), to the following effect:

"(W)here the bankrupt and another are joint obligors, and the other joint obligor pays the claim in full after bankruptcy, such obligor may set off the bankrupt's portion of the obligation which he paid against a debt that the obligor owed to the bankrupt estate. This may be placed on the basis that although rights are adjusted as of the date of bankruptcy, the obligor then had a contingent debt or liability as to the payment of the bankrupt's half of the obligation which was provable under section 63a(8), and which was subsequently liquidated by payment. *However, where the situation involves payment by a surety subsequent to his principal's bankruptcy, a different result would be reached in light of section 57i and the decisions thereunder, despite the terms of section 63a.*" (Emphasis added.)

And see the same authority at paragraph 68.04(4), pp. 881–882, to the following effect:

"The doctrine of subrogation may be implied to permit a set-off, so that a third party who has paid the bankrupt's debt and has taken into his possession property held as security may offset the amount of the debt so paid against the claim of the trustee for the property. But the doctrine will not be applicable to allow a sum

---

**5.** Payment after the date of bankruptcy necessarily duplicates the claim of the creditor whose claim is secured by the guarantee, for, as observed in note 3, *supra*, the claim is necessarily for the amount owed as of the date of bankruptcy.

paid on notes by the bankrupt's trustee to be offset against a claim which the accommodation indorser on said notes has upon the bankrupt. And where a debtor of the bankrupt pays in full, *after bankruptcy,* the claim of a third person against the bankrupt and the debtor as principal and surety, such debtor is only subrogated to the obligation which the bankrupt owed the third person so as to claim dividends thereon in place of the third person, and *may not set off such payment against his own debt to the bankrupt estate."* (Emphasis added.)

This same rule is said to be applicable to a surety who pays the principal debt after bankruptcy. See *id.,* p. 882, n. 59, as follows:

> "The rule that a surety may generally set off a payment made on the principal's debt against his debt due the principal does not seem to be based uipon the technical form of proof, but upon broad principles applicable generally in bankruptcy.... The difficulty is that unless the surety pays before bankruptcy, there is no such rule, and such a rule would conflict with the principles applicable in bankruptcy in such cases. The surety has no right to reimbursement, and when he steps into the creditor's shoes by way of subrogation, he cannot set off his debt which lacks the necessary element of mutuality or reciprocity with reference to the claim asserted. ... He is not deprived of such right of reimbursement with the consequences of a set-off for technical reasons without substance, but in order to avoid the dangers of double proof."

See also *United States Fidelity and Guaranty Co. v. Wooldridge,* 268 U.S. 234, 238, 45 S.Ct. 489, 69 L.Ed. 932 (1925), in which the guaranty company sought to set off, against the receiver's claim on a separate guaranty, an amount paid on a previous guaranty agreement, as a result of which it became subrogated to the payee's rights against the bankrupt. Mr. Justice Holmes held against the right to setoff, stating pertinently as follows:

> "The Court below treated the claim of the Railway Company against the Bank as acquired by the defendant after the insolvency. The defendant, however, contends that upon payment to the Railway Company its subrogation related back to the date of its contract; and we will assume for purposes of argument that this is true. But suppose it is, the right of the Railway Company was simply that of a depositor, a right to share with other unsecured creditors in the assets of the Bank, of which the bond now in suit was a part. There would be *no* equity in allowing the Railway Company a special claim against this bond. We will assume that if the Railway Company had insured the honesty of the Bank's officers the Bank might have offset the obligation of the company against its claim as a depositor. But it is impossible to treat the succession of the defendant to the Railway Company's claim as effecting such an absolute identification with the Railway Company that one and the same person insured the Bank and made the deposits. The doctrine of relation 'is a legal fiction invented to promote the ends of justice ... It is never allowed to defeat the collateral rights of third persons, lawfully acquired.' "

 There are cases which hold to the contrary, following generally the reasoning in *Hayden v. Standard Acc. Ins. Co.,* 316 F.2d 598 (9th Cir.1963), but those cases fail to discern the absence of mutuality, as is required by section 68a, as the precondition to the allowance of the right of setoff.[6]

---

**6.** The *Hayden* case and its progeny either ignore the requirement of Sec. 57i and mutuality or else deem it of less importance that the rights of a surety under the general law. In *Hayden,* for instance, the court ignores the requirement of section 57i which prevents the surety or guarantor from being a claimant in his own right to hold that "mutuality of debts clearly existed between appellee and the bankrupt on the date of the adjudication. Prior to the adjudication, the bankrupt had defaulted and Valley Livestock had by reason of the default filed an action against appellee. Similarly, prior to the adjudication the bankrupt had made a claim against appellee (surety) for loss under the yacht policy previously issued by

As applicable to the action at bar, those cases further ignore the fundamental principle that the right of setoff is not absolute; that its exercise is within the discretion of the court of bankruptcy. "Despite the seemingly mandatory language of section 68a, it has been stated frequently that the privilege of set-off under section 68a is permissive, not mandatory; and that its application, when invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equity." 4 Collier on Bankruptcy para. 68.02, pp. 851–852 (1978). It is, of course, true that "(t)he rule allowing set-off, both before and after bankrupt-

appellee to the bankrupt. There thus existed at the time of bankruptcy a demand against appellee for the principal sum of its bond and a claim by the bankrupt against appellee for the payment under the yacht insurance policy." 316 F.2d at 602. See also *In re Yale Express System, Inc.,* 362 F.2d 111, 115 (2d Cir.1966) ("The trustee contends, and the district court held, that whatever the rule may be in other types of insolvency proceedings, Boston was not entitled to relief in bankruptcy since the Bankruptcy Act section 68 allows the setoff only of 'mutual' debts and credits, and Boston was endeavoring to set off Yale's claims against the shippers against the shippers' claims against Boston. The argument, however, overlooks the surety relationship and fails to recognize that the debts owed by Boston under the endorsement are really those for which Yale is principally liable."); *Bel Marin Driwall, Inc. v. Grover,* 470 F.2d 932, 935, n. 2 (9th Cir.1972) ("The obligation . . . arose from the same subject matter and was thus mutual."); *In re Eastern Freight Ways, Inc.,* 577 F.2d 175, 180 (2d Cir.1978) ("Normally, a surety to an insolvent principal is without recourse against the principal except insofar as the surety may ultimately receive some dividend from the bankruptcy proceedings. If such a surety is forced to pay in full a claim against a bankrupt principal without being permitted to deduct from the amount to be paid the freight charge due from the claimant to the principal, and the claimant then pays the freight charge to the bankrupt's estate, the bankrupt benefits at the surety's expense. Such an inequitable result 'is contrary to the fundamental relation between the (principal and surety).'"). These principles ignore the fact that a surety is not the only creditor who is injured by the bankruptcy of the principal. Accordingly, even the courts which invoke these principles recognize that they are to be applied equitably "especially when applied by the bankruptcy court, which is a court of equity." 577 F.2d at 180. And see *Tucson House Constr. Co. v. Fulford,* 378 F.2d 734, 737 (9th Cir.1967), to the following effect: "(T)his Court has held that a bankrupt's surety, who was required to satisfy a post-bankruptcy judgment obtained by the bankrupt's creditor in an action commenced against the surety and the bankrupt prior to bankruptcy, was entitled to set off the amount of the judgment against the surety's indebtedness to the bankrupt. *Hayden v. Standard Accident Ins. Co.,* 316 F.2d 598 (9th Cir.1963).

\* \* \* \* \* \*

"(But) (o)ur holding (against a subrogee's recovery) is further reinforced by the consideration that section 68 of the Bankruptcy Act . . . is permissive, rather than mandatory, and is to be applied by the courts of bankruptcy in the exercise of discretion consistent with general principles of equity."

Thus, when the concept of "mutuality" is supported by equitable considerations, it appears that the bankruptcy court should exercise its discretion to enforce it. In this case, it appears that "mutuality" is especially meaningful when the defendant owes the monies which are here sought as a partner of the bankrupt and therefore as his fiduciary. "It is universally recognized that the relationship of partners is fiduciary and imposes upon them the obligation of the utmost good faith and integrity in their dealings with one another with respect to partnership affairs." 60 Am.Jur.2d *Partnership* sec. 123 (1972). And money owed in a fiduciary capacity must be paid to the trustee without exercise of the right of setoff. When a defendant in a suit brought by a trustee, as to the monies sought by him, "stood towards (the bankrupt) in the relation of a trustee (or fiduciary), the case was not one of mutual credits and debts, within the meaning of the set-off clause of the bankruptcy law." *Western Tie & Timber Co. v. Brown,* 196 U.S. 502, 509, 25 S.Ct. 339, 341, 49 L.Ed. 571 (1905). "Courts have . . . held that when the liability of the party seeking set-off arises from either a fiduciary duty or a trust, there is a lack of mutuality, and set-off will not be permitted." *Allegaert v. Perot,* 466 F.Supp. 516, 518 (S.D.N.Y.1978), and cases there cited. Thus, in the action at bar, when there is a lack of mutuality, not only by reason of the force of section 57i, but also because of the fiduciary character of the obligation owed to the trustee, the bankruptcy court should exercise its discretion to deny the setoff. This is especially so when the cases favoring setoff despite any lack of mutuality seemingly consider only the surety's injury and fail to consider that "a creditor invoking Section 68 gains a preferred position over other creditors in that he receives full recovery on his debt, whereas other creditors are relegated to satisfaction of their claim from those assets remaining in the bankrupt's estate." *Id.*

cy, is not one that courts are free to ignore when they think application would be 'unjust.' " *In re Applied Logic Corp.,* 576 F.2d 952, 957 (2d Cir.1978). In this case, however, the agreement between the defendant and the bankrupt gave the latter the absolute right to receive certain monies upon dissolution of the partnership, irrespective of any other account between those parties. Generally, cases which disclose the equitable principles surrounding the right to setoff and its exercise in the sound discretion of the court, tend to recognize that, when the bankrupt has a contractual right to payment of the monies, they are not subject to a right of setoff except as specified in the contract. See, e.g., *Western Tie & Timber Co. v. Brown,* 196 U.S. 502, 509, 25 S.Ct. 339, 341, 49 L.Ed. 571 (1905), to the effect that, when the bankrupt has the right to collect certain amounts from another and that, according to the contract, that right is given "irrespective of the account between itself and Harrison," "the case was not one of mutual credits and debts, within the meaning of the set-off clause of the bankrupt law." This principle appears applicable to the action at bar, in which the governing agreement specified certain forms of setoff which would be honored upon dissolution of the partnership agreement, but did not specify that the right to receive monies upon dissolution would be subject to any right of setoff of the amounts paid on the guaranty. And when there has been a palpable question of whether the surety has fully paid the creditor so as to obviate the creditor's claim in the bankruptcy proceedings, it appears that the bankruptcy court is warranted in exercising its discretion against setoff.[7]

Judgment should therefore issue on remand in accordance with the tenor of the district court's order affirming in part and modifying in part the previous judgment of this court. It is therefore

ADJUDGED that plaintiff have and recover the sum of $3,950.41 from the defendant Charles Waller.

---

**7.** Further, because of the lack of mutuality in two separate respects, as noted in note 6, *su-*pra, the court is warranted in exercising its discretion to deny setoff.