GEORGE K. NUTZ, complainant,

*v.*

MURRAY-NUTZ, INCORPORATED, a corporation, defendant; A. W. CRONE & SONS, INCORPORATED, petitioner-appellant.

[Submitted May term, 1931.   Decided October 19th, 1931.]

*Mr. Marshall Van Winkle,* for the petitioner-appellant.

*Mr. Charles Rubenstein,* for the receiver-respondent.

The opinion of the court was delivered by

BODINE, J.

The appellant, A. W. Crone & Son, Incorporated, for convenience called Crone Company, had the general contract for erecting the new state normal school in Jersey City. The insolvent Murray-Nutz, Incorporated, for convenience called Nutz Company, had the subcontract for plastering work in the building. This subcontract was originally with Nutz & Reier, a partnership, but was assigned. George K. Nutz was the active man in the partnership and the corporation.

When the receiver of Nutz Company was appointed Crone Company owed that company $6,517.27. The Nutz Company owed Hudson Builders Material Company $6,331.86 and Washburn Brothers Company, Incorporated, $452.85 for labor and material furnished on the building.

The state board of education, when it awarded the general contract to the Crone Company, exacted a bond pursuant to *P. L. 1918 ch. 75 p. 203*. The statute provides that the bond shall and it did contain an obligation for the payment by the contractor, as well as by all subcontractors for all labor performed or materials furnished in the construction of any public building. The legislative purpose is apparently to secure the payment of all persons furnishing labor and materials on public work.

In order to recover on the bond, the person furnishing labor or material must, within eighty days after the acceptance of the work by the state agency, furnish the surety with a statement of the amount due. If within sixty days the amount is not paid a suit may be brought by such person on the bond in his own name.

The Hudson Builders Material Corporation and Washburn Brothers Company, having furnished labor and materials to the Nutz Company used in the construction of the building, could look for payment to the Crone Company under the terms of the bond. The Crone Company was liable to the Nutz Company creditors, who had furnished labor or materials for the construction of the building.

The receiver of the Nutz Company sued Crone Company for $6,517.27 in the Hudson circuit. Thereupon the Crone Company filed a petition in the court of chancery praying that the receiver be instructed to allow in the circuit court action as a set-off the amount paid by Crone Company to Hudson Builders Material Corporation and Washburn Brothers Company. The dates of certain of the transactions were regarded by the vice-chancellor as controlling. The receiver of the Nutz Company was appointed January 13th, 1930. Before that time the Hudson Builders Material Corporation and Washburn Brothers Company demanded payment from Crone Company, but although a contingent liability existed they could not enforce payment. After the receivership, and within the time and in the manner provided by law, these two creditors served the required statement of demand, so the liability of the Crone Company to them was fixed. The Crone Company then paid these claims, as it was obliged to, and sought an equitable set-off. This the court denied, because when the Crone Company asked the receiver to set-off the claims the same did not exist; hence the action of the receiver was proper; and further no right of set-off existed when the receiver was appointed, because there was no obligation to pay claims at that time and, therefore, the subsequent occurrence could not enlarge existing rights. The result seems to be that the Crone Company must pay not only the Nutz Company because of its contract but also must pay for the labor and materials furnished, because of its bond given pursuant to the statute and is further deprived of the right to set off the claims so paid. The Nutz Company was primarily liable to these creditors. The Crone Company paid because it was liable as a surety under its bond. Under the Bankruptcy act the Crone Company would be subrogated to the right of a creditor so paid and could prove such claim. The same right exists in equity.

Had the Nutz Company given the Hudson Builders Material Corporation and the Washburn Brothers Company, its note endorsed by the Crone Company, the Crone Company, having paid the note, could have proved against the insolvent

estate of the Nutz Company. *Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 38 N. J. Eq. 151, 153.* Vice-Chancellor Van Fleet said in that case: "The surety is not bound to pay anything that the principal's property will pay. As against the principal, the surety is only bound to pay what the principal cannot. So clear is the justice of this principle that it has been enforced, by legislation."

Vice-Chancellor Stevens said in *Shields* v. *John Shields Construction Co., 83 N. J. Eq. 21, 23:* "The court of errors and appeals has very recently, in the case of *Butler* v. *Commonwealth Tobacco Co., 74 N. J. Eq. 423,* held that our statute, in so far as it deals with insolvent corporations, is essentially a bankrupt act and that its provisions should be construed accordingly. The Bankrupt act [section 68] provides that 'in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid.' The act not only uses the expression 'mutual debts,' but the broader phrase, 'mutual credits.' The expression in our Corporation act, 'mutual dealings' is, as Judge Elmer points out, broad enough to include them both. It is well settled that in bankruptcy proceedings debts not yet due are the subject of set-off. * * * the uniform current of authority in the district and circuit courts of the United States and, * * * in the supreme court, is to the effect that as unmatured claims are provable against the bankrupt's estate, they are necessarily the subject of set-off under the provisions of section 68 of the Bankrupt act. Not only does our act respecting insolvent corporations say that set-off is allowable where the dealings are mutual but, like the Bankrupt act, in section 86, it declares that 'the creditors shall be entitled to distribution on debts not due, making in such case a rebate of interest when interest is not accruing on the same.' For the purpose of the winding up proceedings this section matures the debt at the time of the receiver's appointment. As soon as he is appointed claims become provable. As our act has been held by the court of errors and appeals to be a bankruptcy act and as it contains

provisions certainly as broad as the Federal Bankruptcy act, there is every reason why the decisions of the federal courts should be followed. Uniformity in this regard is as desirable as it is in other cases where the state and federal courts exercise a concurrent or at least a very similar jurisdiction."

Mr. Justice Reed, in delivering the opinion of the court in *Butler* v. *Commonwealth Tobacco Co., supra,* said: "In 1835, in the case of *State Bank* v. *Receivers of the Bank of New Brunswick, 3 N. J. Eq. 266,* a receiver of an insolvent corporation was appointed under 'An act to prevent frauds by incorporated companies,' passed in 1829, the act, which, by re-enactment, is the same as that under which the present proceedings were taken. The insolvent corporation had a claim against the state bank, and the latter held an independent claim against the insolvent corporation. The state bank also held a thousand dollar draft as collateral security for its claim against the insolvent bank. Chancellor Vroom was called upon to deal with two questions—first, whether there existed a right to set-off the independent claims, and second, whether the state bank of New Brunswick was bound to apply to its debt the value of its collaterals and prove only for the balance, or was entitled to prove for the whole amount of its claim regardless of its collateral security. The chancellor [Vroom] held that while the independent debts could not be set-off under our statute to enable mutual dealers to discount, yet they could be set-off under the act of 1829, because that act partook largely of the character of a bankrupt act, and under the bankrupt system, the set-off was permissible. The chancellor also held that the draft should be appropriated to the payment of so much of the debt due to the state bank of New Brunswick as it would liquidate, and dividends should be paid on the balance. * * *

"So it appears that in the decisions of questions arising in the administration of the assets of insolvent corporations, the courts of this state, since the earliest case, have uniformly regarded our statute as essentially a bankrupt act, and applied the doctrines which have controlled in bankruptcy proceedings. The practice of applying collateral securities to

the liquidation of a debt against an insolvent corporation, and of proving only for the balance has been uniform for over seventy years, and hundreds of insolvent corporations have been wound up and their assets distributed in conformity with this rule. Indeed, the influence of the doctrine laid down by Chancellor Vroom in 1835 has been much broader, for it seems to have controlled in the administration of insolvent estates in every form. * * *

"It is unnecessary, however, in this case, to consider the general application of the bankrupt rule to all cases of insolvency. It is sufficient to say that the bankrupt character of our statute concerning insolvent corporations recognized so long, vindicates the rule adopted in the earliest case and followed ever since."

A surety who pays the debt of his principal after the adjudication in bankruptcy may set-off the amount so paid against his own debt to the bankrupt. *In re Dillon, 100 Fed. Rep. 627.*

Section 57i of the Bankruptcy act is as follows: "Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor."

"Under subsection i a surety or indorser or other person secondarily liable for the bankrupt may prove the principal creditor's debt, but only when the principal creditor could prove and does not. If the creditor has exhausted his rights by proving his claim, a person who is individually liable on the claim cannot file his claim against the bankrupt based upon the same obligation. * * * A surety paying the debt of his principal after bankruptcy may set-off the amount so paid against his debt to the bankrupt, and this is so, irrespective of the provisions of the Bankruptcy act." *Collier on Bankruptcy 1163.*

The present case is analogous in many respects to *Wagner* v. *Burnham, 224 Pa. 586; 73 Atl. Rep. 990.* There a surety

was allowed to set-off a debt paid for the bankrupt against the claim of the bankrupt against him. On principle, it seems to us that the obligation of the Crone Company to pay the laborers and materialmen as fixed by its bond was a secondary obligation. The insolvency of Nutz Company imposed no further liability, but merely made certain an obligation that already existed. Crone Company was obliged to pay certain of the Nutz creditors because of the obligation under the bond. They were subrogated to the rights of the creditors whom they were obliged to pay and can set-off the same. The Crone Company's right to set-off arises from subrogation. To the extent that Hudson Builders Material Corporation and Washburn Brothers Company would have been entitled to a distributive share of the estate of Nutz Company, to that extent the set-off should have been allowed. The fact that these creditors did not make a claim does not deprive Crone Company, having acquired their rights by payment, to set the same off against Nutz Company.

The court quite properly decided that it had jurisdiction of the parties and the subject-matter of the dispute. Sections 66 and 78 of the Corporation act and a long line of decisions cited in the opinions of the court below settle that point. The court was in error, however, when it decided that no rights of set-off existed when the receiver was appointed and none, therefore, could exist thereafter.

"Strictly, the time when the right to set-off is determined is the time petition is filed. Unmatured claims may be set-off after, but not before, the bankruptcy proceedings have commenced. 'Debt' means any debt, demand, or claim provable in bankruptcy. And a debt is provable whether due or not at the time of bankruptcy. To determine, therefore, whether the holder of a claim is entitled to the benefit of section 68, it is necessary only to inquire whether his claim is one provable in bankruptcy." *Collier on Bankruptcy 1610* § *68f.*

Applying this test the sole question for the court was this: Was the Crone Company's claim one provable in bankruptcy? The answer is yes. *In re Dillon, supra.* The receiver should, therefore, have allowed it either when requested so to do or

should now set up the fact in the pending law action. The surety's right to recover only arises when he has paid but he is not obliged, as Vice-Chancellor Van Fleet pointed out, to pay anything the principal's property will pay. The principal's property was in the custody of the court of chancery and that court could and should have settled the point.

"The adjustment of demands by counter-claims or set-off rather than by independent suit is favored and encouraged by the law to avoid circuity of action. By the decided weight of authority it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference." *North Chicago Rolling Mill Co.* v. *St. Louis Ore and Steel Co., 152 U. S. 596, 615.*

If insolvency has taken place it is impossible to settle claims without balancing obligations which exist *in præsenti* even though payable *in futuro* and it makes no difference whether these obligations are due to or from the insolvent, provided we can determine with reasonable certainty and without undue delay the present value of these conflicting obligations. *34 Harvard Law Rev. 196.* It was the duty of the court of chancery, having jurisdiction of the cause and the parties, to do just this thing and not relegate the Crone Company to the circuity of setting off in the law action a claim which could have been asserted in bankruptcy and which can be asserted in the court of chancery with equal propriety.

The decree will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.