In the Matter of BEL MARIN DRIWALL, INC., Bert O. Summers, doing business as Erbentraut & Summers, Appellant,

v.

William B. GROVER, Trustee in Bankruptcy, Appellee.

No. 26899.

United States Court of Appeals, Ninth Circuit.

Nov. 27, 1972.

---

Dennis J. Montali (argued), of Rothschild & Phelan, San Francisco, Cal., for appellant.

Philip M. Arnot (argued), Eureka, Cal., for appellee.

Before KOELSCH, BROWNING and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This appeal was taken from the district court's affirmance of the bankruptcy referee's turnover order. The question is whether direct payments by the bankrupt's debtor (a general contractor) to the bankrupt's creditor (a supplier to the bankrupt), made under obligation of California law, were invalid as setoffs under § 68b(2) of the Bankruptcy Act, 11 U.S.C. § 108b(2) (1964), against the debtor's obligations to the bankrupt's estate. We reverse.

### Facts

Appellee has substantially adopted appellant's statement of the facts, about which there is no serious dispute. The bankrupt's debtor was appellant Summers, doing business as Erbentraut and Summers, who was general contractor for a hospital remodelling project. Summers employed Driwall, who later became bankrupt, as a subcontractor. One of the subcontractor's suppliers was the bankrupt's creditor, Glidden-Durkee Co. (hereinafter referred to as G–D). Appellee Grover is Driwall's trustee in bankruptcy.

On September 22, 1969, G–D notified Summers and his surety on his contractor's bond of a specific claim for paint which G–D had furnished to Driwall. The amount of this claim is here agreed to be $1,467.02. On October 17, 1969, Driwall filed a voluntary petition in

bankruptcy, and was then adjudicated bankrupt by operation of law. Bankruptcy Act § 18(f), 11 U.S.C. § 41(f) (1964). The matter was referred to the referee, and on January 20, 1970, during the proceedings, Summers paid G–D the $1,467.02. Summers then claimed that amount as a setoff against a larger sum it admittedly owed the bankrupt for work done by the bankrupt on the hospital job.

The referee in bankruptcy found that:

"6. The payment made by the prime contractor to Glidden-Durkee has to be held as a self-serving payment with an eye to off-set in light of the clear testimony that there was a defect in the materials used which said defect was to be corrected by Glidden-Durkee by the supplying of further material and the factual finding of this court that the prime contractor indicated no responsibility would be placed on the bankrupt subcontractor for failure in relation to the materials themselves.

"Where there is no suit and no lien it is not only difficult but impossible to imagine why after adjudication of bankruptcy where full knowledge existed on the part of the prime contractor, the prime contractor should make a payment to anyone other than the party to whom he was contractually liable. When this circumstance exists it has to be determined that this essential preferential treatment was given with the view to utilizing the payment as an off-set." (Finding of Fact No. 6.)

"2. From the facts above determined it must be a conclusion of law that no off-set can be allowed by the

respondent's [Summers'] payment to Glidden-Durkee of $1,469.02 after adjudication." (Conclusion of Law No. 2.)

On October 12, 1970, after reviewing the record and hearing argument, the district court affirmed the referee's order, and dismissed Summers' petition for review. This appeal followed.

### The Referee's Findings

■ Appellee takes the position that the findings just quoted must be affirmed as the referee's express determinations, after hearing testimony, that Summers' intent in paying G–D was to acquire a setoff, which would be disallowed by the Act.[1] But where such findings and conclusions are clearly erroneous, it is our duty to reverse them. Fed.R.Civ.P., Rule 52; Costello v. Fazio (9 Cir. 1958) 256 F.2d 903.

At oral argument herein, appellee conceded that, contrary to the referee's findings just quoted, there was in fact no defective paint involved in G–D's claim for which Summers made payment. Our own review of the record presented here sustains that concession as a necessary one.

Further, the statement in the second paragraph of Finding No. 6, *supra,* that there was "no suit and no lien" to cause appellant's payment, is contrary to the undisputed evidence that G–D properly noticed its materialman's claim under California law. As will shortly be discussed in greater detail, it is apparent that at the time of the payment there was a direct obligation from Summers to G–D for the materials G–D furnished. The findings and conclusions thus also misapply the law relating to such claims.

1. Bankruptcy Act § 68, 11 U.S.C. § 108 (1964) provides:

a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

b. A set-off or counterclaim shall not be allowed in favor of any debtor of

the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

When these parts of the findings are excised, there remains only the referee's inability to imagine any reason for the payment other than acquisition of an improper setoff. We are unable to accept such a basis for the challenged order. The findings and conclusions quoted *supra* are clearly erroneous.

### The Setoff

■ Unlike the referee, we have no difficulty finding a reason, other than acquisition of a setoff, for Summers' payment to G–D. Under the California law applicable at times material herein, a general contractor and his surety were subject to judgment in favor of unpaid materialmen and suppliers. Calif.Code Civ.Proc. § 1185.1(c) (1955), repealed effective Jan. 1, 1971, Calif.Stats. ch. 1362, § 3, p. 2781 (1969).

The contractor, Summers, paid the supplier, G–D, pursuant to Summers' duty to protect the owner of the job from the claim, a duty which these statutes imposed, and coincidentally no doubt to protect the bond from claim. The purpose of the statute was to protect owners from liability beyond the contract price for the job. *Id.*, § 1185.-1(d). This obligation was independent of the duty of the bankrupt (the subcontractor) to pay for materials furnished him. If the materialman was unpaid, his claim could take the form both of a lien against the subject matter of the work, and a claim against the contractor and his surety. *Id.*, §§ 1184.1, 1185.-1(a).

G–D gave written notice of its claim to Summers and his surety on September 22, 1969, prior to the petition in bankruptcy (although no doubt with knowledge of Driwall's financial problems). Under the California statutes, such notice temporarily matured G–D's claim against Summers and his surety, without need to foreclose the lien. Calif. Code Civ.Proc. § 1200.1(d) (1955), re-

pealed effective Jan. 1, 1971, Calif.Stats. ch. 1611, § 47, p. 3405 (1969). At the time of Summers' payment on January 20, 1970, G–D's rights had been perfected by the notice and the obligation was established by the supplying of materials. There remained only timely commencement of suit for G–D to realize on its claim against Summers or his surety. *Id.*, § 1200.1(d). Although the time for filing a lien against the work had expired, the time for filing suit against Summers or the bond had not. *Id.*, §§ 1193.1(c), 1197.1, 1200.1(d). In any case, Summers as prime contractor had a mandatory obligation to pay materialmen and suppliers, including G–D, fulfillment of which was a condition of the bond. *Id.*, §§ 1185.1(c), 1192.1(a); Keenan Pipe & Sup. Co. v. Shields (9 Cir. 1956) 241 F.2d 486, 489 & n. 8.

■ Summers therefore legally owed and properly paid a direct obligation to G–D, which was independent of the bankrupt's obligation to G–D.[2] By its payment, Summers did acquire a setoff, but not "with a view to [use as a setoff]" under § 68b(2) of the Act, 11 U. S.C. § 108b(2) (1964). Paul B. Emerick Co. v. Wm. Bohnenkamp & Assoc., Inc., 242 Or. 253, 409 P.2d 332, 335 (1965); 4 Collier, Bankruptcy ¶ 68.12, p. 904–06 & n.6 (14 ed. 1971).

■ Appellee argues that title to the bankrupt's accounts receivable from Summers passed to the trustee on the date of bankruptcy. Bankruptcy Act § 70(c), 11 U.S.C. § 110(c) (Supp. IV, 1968). Therefore, he says, any subsequent payment by Summers to G–D was improperly made from funds held by Summers for the account of the bankrupt, and owed to the trustee. We disagree.

■■ The issue herein is not when an offsetting payment was made, but whether an offsetting liability existed. The case of Desser, Rau & Hoffman v. Goggin (9 Cir. 1957) 240 F.2d 84, 86,

2. The obligation, however, arose from the same subject matter and thus was mutual. § 68a of the Act, *supra*; Hayden v. Stand-ard Acc. Ins. Co. (9 Cir. 1963) 316 F.2d 598, 602. *But see* 4 Collier, Bankruptcy ¶ 68.04.

cert. denied, 355 U.S. 813, 78 S.Ct. 12, 2 L.Ed.2d 30, cited by appellee, is not in point. Supervening bankruptcy does not destroy liens merely because procedural steps remain to perfect them, such as filing of suit on the properly noticed claim herein. For example, where lien claimants are paid on behalf of the bankrupt, his trustee cannot recover the funds from either the suppliers or the owner. Stone v. Mondie (W.D.Okl.1957) 157 F.Supp. 929. *See also* In re J. V. Gleason Co. (8 Cir. 1971) 452 F.2d 1219, 1225.

> "A trustee . . . takes the bankrupt's property subject to any equities existing, and the mere fact of bankruptcy alone does not confer on the trustee any greater rights as to setoff unless there is something in the Act specifically so doing." 4 Collier, *supra*, ¶ 68.02, p. 849 n.6.

We have previously held that "The right to a set-off has been recognized by the courts even though payment is not made until after the adjudication." Hayden v. Standard Acc. Ins. Co. (9 Cir. 1963) 316 F.2d 598, 602.

■ Appellee also urges that if a setoff is allowed, G–D as a creditor of the bankrupt will have been granted an unlawful preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1964). The law is to the contrary. If a setoff is allowed under § 68 of the Act, 11 U.S.C. § 108 (1964), it is then not a voidable but a lawful preference under § 60 of the Act. Tucson House Constr. Co. v. Fulford (9 Cir. 1967) 378 F.2d 734, 738; Greenblatt v. Utley (9 Cir. 1956) 240 F.2d 243. Further, on its face § 60(a)(1) of the Act, defining "preference," does not appear to reach post-bankruptcy payments. And the record does not show that any other creditor of the bankrupt was in the same position as was G–D. *Cf.* American Sur. Co. v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946); Keenan Pipe & Sup. Co. v. Shields (9 Cir. 1956) 241 F.2d 486, 490.

This court denied a setoff to a general contractor in *Tucson House, supra*, 378 F.2d 734. However, we there held that the contractor had purchased the claimed setoff "with a view" to use as a setoff, because the contractor's liability for the claim was only remote and contingent. A solvent surety of his subcontractor was there primarily liable for the obligation which the contractor paid. The contractor "in effect assumed the role of a volunteer and officiously paid [the] suppliers after bankruptcy." *Id.* at p. 737.

Such a problem does not exist in the present case, because California law required Summers to pay the claim sought to be used as a setoff. Indeed, in *Tucson House* we indicated that we would "sanction such a preference when the claim used as a set-off has been acquired as a result of a direct legal obligation." *Id.* at p. 738. We follow that rule in this case. Summers did not acquire the claim to subvert the purpose of § 68b(2) of the Act. See 4 Collier, *supra*, ¶ 68.12, p. 903 & n.1 (14 ed. 1971 & Supp.1971).

Summers' direct statutory liability was independent of any duty to the bankrupt, as was the direct contractual duty of the surety in *Hayden, supra*. The purpose of both payments was to protect the owner, and not to acquire a setoff in bankruptcy so as to gain a full rather than a discounted payment of the claim. *Cf.* Hartford Acc. & Indem. Co. v. Coggin (4 Cir. 1935) 78 F.2d 471, 474, cert. denied, 296 U.S. 620, 56 S.Ct. 141, 80 L.Ed. 440.

We therefore hold that Summers' $1,467.02 payment to G–D was not an improper acquisition of a claim with a view to setoff. Because the setoff was proper under § 68 of the Act, the judgment must be reversed. Appellee has here conceded that if G–D had filed suit, it would have become a secured creditor to whom payment was proper. In view of our discussion above, then, no further action on this point is necessary on remand, save appropriate amendment of the turnover order to permit the setoff.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.