**In re FLANAGAN BROS., INC., Debtor.**

**Bankruptcy No. 83–03550.**

United States Bankruptcy Court,
D. New Jersey.

March 14, 1985.

---

Robert F. Blomquist, Davis, Reberkenny & Abromowitz, Cherry Hill, N.J., for movant, Don Rogers, Inc.

William P. Gillon, Floria & Maloney, Cherry Hill, N.J., for Richard L. Berry, Trustee.

Gary M. Perkiss, Joseph R. Pozzuolo Associates, P.C., Philadelphia, Pa., for Billows Elec. Supply Co.

## OPINION

EMIL F. GOLDHABER, Chief Judge: [1]

The predominant issue presented in the case before us is whether a general contractor, who under applicable law is a surety for all persons furnishing labor and material on a state building project, may set-off its entire debt to the debtor/subcontractor against the claim of a materialman who supplied goods to the debtor, rather than set-off only a portion of its debt which equals the amount of a dividend the materialman would receive in the bankruptcy proceeding. The question has arisen under the Declaratory Judgment Statute on the contractor's motion for relief from the automatic stay to set off the liabilities. For the reasons discussed below, upon the performance by the general contractor of a certain condition set forth in the appended order, we hold that it may set off its entire debt to the debtor.

We recapitulate the facts of this controversy as follows: [2] The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code ("the Code") on June 10, 1983. Prior to the filing of the petition, Don Rogers, Inc. ("Rogers"), executed a contract with the city of Bridgeton, New Jersey, whereby Rogers agreed to undertake a certain construction project in that municipality. Under the terms of the contract and New Jersey law, Rogers obtained a performance bond from a surety for the protection of all parties supplying labor or materials for the construction of the project. Rogers subcontracted a portion of the project to the debtor who, in turn, purchased certain electrical components on credit for use in the project from Billows Electric Supply Company ("Billows"), a materialman. Under the two contracts Rogers owes the debtor a balance of $18,520.92 while Billows asserts a claim of $22,270.45 [3] against the debtor.

1. Specially designated to hear and dispose of cases in the United States Bankruptcy Court for the District of New Jersey in Camden.

2. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

3. We expressly do not make the factual finding that the debtor owes Billows $22,270.45; we merely find that Billows claims that such sum is owed. For the sake of simplicity of discussion

we shall use the $22,270.45 figure as if liability were fixed in that amount.

The parties have apparently chosen to litigate the amount of the debt in the federal district court for the Eastern District of Pennsylvania in an action commenced by Billows for payment under Rogers' surety bond. At the behest of the parties, this action is currently in abeyance pending a resolution of the instant matter before us. The parties have indicated that when we enter judgment on the instant matter, they

Under New Jersey law, which is applicable here, Rogers, as a general contractor, is liable on a materialman's claim against a subcontractor on a public works contract such as the one in the case at bench. Consequently, Billows' claim against the debtor also lies against Rogers. In the event Rogers satisfies its obligation to Billows, Rogers will be subrogated to Billows right to receive payment from the debtor. Thus, the debtor will owe Rogers $22,270.45 on the subrogated claim, while the debtor will still have its $18,520.91 claim against Rogers. Since Rogers and the debtor will each owe a debt to the other, set-off is ostensibly appropriate.

As stated in 11 U.S.C. § 553[4] of the Code, "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such a creditor against the debtor that arose before the commencement of the case...." The only point advanced by the trustee is that Rogers should be authorized to set off its debt

will likely settle the action now pending in district court.

On the consent of the parties the federal district court in New Jersey is also withholding further action in an appeal from an order and accompanying opinion entered by us on June 26, 1984, in which we dismissed Rogers' complaint for interpleader against Billows, the surety, the trustee and one other party. *See, Rogers v. Berry (In Re Flanagan Bros., Inc.)*, 40 B.R. 183 (Bankr.D.N.J.1984).

Although the amount of the debtor's liability to Billows is not yet fixed at a sum certain, the parties are in apparent agreement that at least some amount is owing. Another uncertainty in the case is that Rogers has not yet satisfied Billows' claim, and it is such satisfaction which will give Rogers a claim through subrogation against the debtor. Only after acquiring this claim against the debtor will Rogers be in a posture to set off. Notwithstanding these uncertainties Rogers asserts that we may reach the merits of the instant action through the Declaratory Judgment Statute which states as follows:

§ 2201. Creation of remedy

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201. Although the parties have not exhaustively briefed the issue, it appears that we may properly enter judgment on this dispute.

**4.** § 553. Setoff

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

only to the extent that Billows, the materialman, would have ultimately received a distribution from the bankruptcy estate.

For support of its position Billows relies most strongly on *Nutz v. A.W. Crone & Sons*, 109 N.J.Eq. 95, 156 A. 668 (1931),[5] the facts of which are virtually identical to those of the case at bench. In *Nutz* the general contractor of a public works project in New Jersey sought set-off in state chancery court against a subcontractor which had been placed in receivership. The contractor requested set-off of his liability to the debtor with a subrogated claim against the debtor which the contractor held due to its satisfaction of materialmen's claims against the debtor. On appeal "the sole question for the court was this: Was the [contractor's] claim one provable in bankruptcy?" 109 N.J.Eq. at 101, 156 A. 668. The appellate court reversed the trial court, allowed the set-off and held that the claim was provable in bankruptcy.[6] The issue of provability of the contractor's debt arose because the contractor paid the materialmen's claims after the appointment of the receiver. In the case at bench, at least in so far as Rogers has not yet paid the materialmen's claim, the issue in *Nutz* is reasonably related to the issue before us. But, the issue of the *extent* to which set-off would be allowed was not before the court in *Nutz*. Nonetheless, the trustee relies upon the highlighted language in the following quote from *Nutz* in support of his position:

> [The contractor] was obliged to pay certain of the [debtor's] creditors because of the obligation under the bond. They were subrogated to the rights of the creditors whom they were obliged to pay

11 U.S.C. § 553.

5. The trustee also relies on "11 U.S.C. § 509(a) and the Notes of Committee on the Judiciary, Senate Report No. 95–989." Section 509(a) states as follows:

> (a) Except as provided in subsections (b) and (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

and can set-off the same. The [contractor's] right to set-off arises from subrogation. *To the extent that [the materialmen] would have been entitled to a distributive share of the estate of the [debtor], to that extent the set-off should have been allowed.* The fact that these creditors did not make a claim does not deprive [the contractor], having acquired their rights by payment, to set the same off against [the debtor].

109 N.J.Eq. at 101, 156 A. 668. Since the issue in *Nutz* was the provability of payment rather than the extent to which set-off would be authorized, the highlighted language is dicta. Furthermore, the highlighted sentence apparently exemplifies a particularly poor choice of words by the court since the tenor of the entire opinion, but for that sentence, evinces the court's belief that set-off would be allowed to the full extent of the contractor's debt rather than limited by the size of the dividend the materialmen would have received. In fact, the very term "set-off," which the court in *Nutz* uses liberally throughout its opinion, denotes a netting of mutual debts. 4 *Collier on Bankruptcy* ¶ 553 (15th ed. 1984). Thus, *Nutz* is no impediment to set-off. The only possible obstacle to the entry of such relief appears to be § 553(a)(2).

Under § 553(a)(2) set-off may not be allowed if the creditor's "claim was transferred, by an entity other than the debtor, to such creditor ... after the commencement of the case...." In the case at bench Rogers has not yet paid Billows' claim, but at the time of such payment the latter's claim ostensibly will have been "transferred" to Rogers "after the commencement of the case."

This provision merely grants a right of subrogation and thus we fail to see how this subsection supports the trustee's position, The Committee Notes, which are a portion of the legislative history of the Code, fail to cast any illumination on § 509(a) which would aid the trustee.

6. Although still extant under the Bankruptcy Act of 1898 to the extent cases are still pending under that statute, the concept of provability has not been incorporated in the Code. See, 11 U.S.C. § 502(c); 3 *Collier on Bankruptcy* § 502.-01, at p. 502–9 (15th ed. 1984).

The statutory bar to set-off under § 553(a)(2), which exists in the case law under the prior bankruptcy statute, the Bankruptcy Act of 1898,[7] serves to prohibit trafficking in claims against a debtor in order to effect set-off. Typically, a party holding a claim against a bankruptcy estate might sell his claim at a discount to an entity that is liable to the debtor on a prepetition transaction. The transfer of the claim is feasible if the transferor would receive more from the transferee for the claim than on his distributive share of the bankruptcy estate. The transferee would benefit by paying a lesser sum to the transferor than he would have paid on his obligation to the debtor. The only party to lose in the transaction is the debtor.

This situation differs from the case at bench. Here Rogers is liable to the debtor for $18,520.91 on the subcontracting work. This sum represents, *inter alia*, the debtor's profit from the project, if any, plus funds which would have been properly payable by the debtor for satisfaction of materialmen's claims, such as that of Billows. Rogers, as surety for the debtor's obligations on the project according to state law, is thus liable directly to Billows on its claim, as well as being indebted indirectly to Billows through its indebtedness to the debtor. Hence, if no distribution of the estate is accorded to unsecured creditors due to insufficient assets, Rogers will have paid twice on Billows' claim. In addition, the debtor will be holding funds from Rogers representing a satisfaction of Rogers' indirect liability to Billows. Since Rogers will have satisfied Billows' claim directly as

well—thus extinguishing the debt—the debtor will have no outstanding liability to Billows. Therefore, the debtor will have received a windfall. A liability will have become an asset.

■ Such an inequitable result could not have been intended by Congress, notwithstanding the language of § 553(a)(2) which bars set-off where "such [a] claim was transferred, by an entity other than the debtor, to such creditor after the commencement of the case." We hold that a claim is not transferred[8] within the meaning of § 553(a)(2)(A) "when the claim used as a set-off has been acquired as a result of a direct legal obligation." *Bel Marin Driwall, Inc. v. Grover,* 470 F.2d 932, 936 (9th Cir.1972), *quoting from Tucson House Constr. Co. v. Fulford,* 378 F.2d 734 (9th Cir.1967); *Hayden v. Standard Accident Insurance Co.,* 316 F.2d 598 (9th Cir.1963); *In Re Sherman Plastering Co.,* 346 F.2d 492 (2d Cir.1965). Consequently, in the event Rogers pays Billows' claim, state law and § 553 of the Code allow Rogers to set off that sum against its indebtedness to the debtor.

■ The last issue for decision is whether we should grant Rogers relief from the automatic stay to set off these obligations in light of the possibility that it will satisfy the claim to Billows. Under 11 U.S.C. § 362(d)(1) relief from the stay may be granted "for cause." In a chapter 7 proceeding, such as the one at bench, the mere existence of mutual obligations subject to set-off constitute sufficient "cause" in the absence of countervailing factors.[9] Al-

7. Section 68 of the Bankruptcy Act of 1898, former 11 U.S.C. § 108 (1976).

8. Although 11 U.S.C. § 101(40), which has been redesignated as § 101(48) by the Bankruptcy Amendments and Federal Judgeship Act of 1984, defines a transfer broadly, this definition cannot be blindly applied to the facts of this case due to the inequity which would result.

9. In a chapter 11 proceeding a decision to grant relief from the automatic stay to allow set-off would typically rest on more factors than would such a determination in a chapter 7 case. As stated in a chapter X reorganization case under the former bankruptcy statute:

In considering whether the application of a set-off provision is inconsistent with the purpose of the reorganization chapter it must be kept in mind that there is a sharp difference between straight bankruptcy proceedings and those for reorganization. In bankruptcy the object is to liquidate the assets of the bankrupt, to pay off his creditors as quickly and inexpensively as possible and to free the bankrupt from the burden of accumulated debt so that he may begin his business life anew. But the purpose of reorganization is not liquidation at all. If reorganization is successful the debtor corporation will continue to function, to pay its creditors, and carry on its business.

though the issue has not been thoroughly briefed, no such factors have been brought to our attention and, as we discussed above, set-off is allowable under § 553 and state law. Thus, we will enter an order granting relief from the automatic stay.

The purpose of reorganization is to save a sick business, not to bury it and divide up its belongings.

It is quite evident that the application of the unqualified right of set-off might be enough, without more, to defeat the purpose of reorganization. As Finletter says on the subject: "It is not appropriate to use the same rule of set-off as is applied in a liquidation. To do so may deprive the debtor, for no equitable reason, of all or a large part of its current assets at a time when it needs them most and may frustrate the purpose of the Act." [Finletter, *The Law of Reorganization* 306 (1939)].

\*    \*    \*    \*    \*    \*

The criteria to be applied [in a reorganization case] include the value of the assets, the temporary or permanent duration of the debtor's inability to pay its debts as they mature, the superior liens, if any, to that of the creditor seeking set-off, and any understanding between the parties that the deposits were to be used to cancel the debtor's obligation. [*Lowden v. Northwestern National Bank,* 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114 (1936) ].
*Susquehanna Chemical Corp. v. Producers Bank & Trust Co,* 174 F.2d 783, 786–87 (3d Cir.1949) (footnote incorporated in text).