8 F.3d 29
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
REDMOND NATIONAL BANK, Plaintiff-Appellant,
v.
AAA ELECTRIC INSTALLATIONS, INC.; Bodenhamer/Stewart Inc.;
Amwest Surety Insurance Company, Defendants-Appellees.
 No. 91-35639.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided Aug. 30, 1993.
 
 Before HUG, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Redmond National Bank (RNB) appeals the district court's affirmance of the bankruptcy court's order adjudging RNB's interest in a withheld progress payment inferior to that of Amwest, surety to defaulting debtor/subcontractor. We affirm that determination and remand.
 
 I.
 
 3
 North Thurston School District No. 3, in Thurston County, Washington, contracted with Bodenhamer/Stewart, Inc. for the construction of a school. Bodenhamer/Stewart (Bodenhamer) entered into a subcontract with AAA Electrical Installations, Inc. (Debtor) on July 20, 1989, to perform electrical work on the school project. Amwest Surety Insurance Company (Amwest) was the surety on AAA's performance and payment bonds. The indemnity agreement between Amwest and debtor was signed September 22, 1988, and the bonds were issued August 21, 1989.
 
 
 4
 Debtor filed for Chapter 11 bankruptcy protection on May 4, 1990, at which time its performance on the school subcontract was not yet complete. Through the order of the bankruptcy court, debtor rejected the subcontract and Amwest was called upon to honor its bond. Amwest arranged with Bodenhamer for a substitute subcontractor to complete debtor's work, and paid Bodenhamer for that substitute contractor's billings. In dispute is a progress payment received by Bodenhamer prior to, but disbursed after debtor's chapter 11 filing. Pursuant to order of the bankruptcy court, Bodenhamer has placed the disputed fund in its attorneys' interest-bearing trust account pending further order of the court. Amwest claims superior right to the funds in the account, under suretyship principles. So, too, claims Redmond National Bank, though under a different theory.
 
 
 5
 RNB advanced to the debtor operating capital, in return for a promissory note, on June 30, 1989. This note, representing a debt of $100,000 plus interest, is secured by personal property of the debtor, including accounts, contract rights, and general intangibles. The financing statements covering this loan were filed January 9th and January 28th of 1989. RNB's security interest in debtor's accounts thus attached after debtor and Amwest entered into the suretyship agreement (September 22, 1988), but was perfected before the bonds were actually issued (August 21, 1989). RNB claims that its prior perfected security interest in debtor's accounts attached to the unpaid advance, and thus RNB enjoys priority in the disputed fund. The claims of Amwest and RNB each exceed the amount of money in the disputed fund.
 
 
 6
 The bankruptcy court, by its order of September 21, 1990, ruled in favor of Amwest, concluding
 
 
 7
 7. Under its subcontract with AAA, Bodenhamer/Stewart has the right to offset any amounts that would be owed to AAA had it performed by any excess completion cost of AAA's work or any amounts owed to unpaid suppliers and subcontractors of AAA....
 
 
 8
 8. Amwest is subrogated to the rights of Bodenhamer/Stewart with regard to all rights of offset or affirmative claims which have accrued to Bodenhamer/Stewart.
 
 
 9
 9. Amwest['s] rights to the fund established by Bodenhamer/Stewart are superior to the claims of the Redmond National Bank to the fund because AAA did not earn the funds in the trust under its subcontract with Bodenhamer/Stewart by reason of its default.
 
 
 10
 The district court affirmed, finding that Bodenhamer's retention of the funds constituted a proper setoff under § 553 of the bankruptcy code and that as surety, Amwest was subrogated to the rights of Bodenhamer. As between Amwest and RNB, the district court found that "AAA never earned the money withheld by Bodenhamer which is now in the fund," and thus denied RNB's derivative interest in the fund. RNB appeals the district court's judgment.
 
 II.
 
 11
 We must first determine whether Bodenhamer has legitimate setoff rights against debtor under 11 U.S.C. § 553(a) which permit Bodenhamer to withhold the progress payment based on debtor's failure to perform under the contract. Section 553 of the Bankruptcy Code provides in pertinent part:
 
 
 12
 [e]xcept as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title under a claim of such creditor against the debtor that arose before the commencement of the case.
 
 
 13
 We apply federal law in determining the propriety of setoffs under the Code. Rochelle v. United States, 521 F.2d 844, 854 n. 24 (5th Cir.1975), modified on other grounds, 526 F.2d 405 (5th Cir.1976), cert. denied, 426 U.S. 948 (1976).
 
 
 14
 The first requisite to setoff under § 553 is that the debt sought to be offset must be "mutual." Mutuality requires that the debts must be in the same right, and between the same parties in the same capacity. See In re Visiting Home Services, Inc., 643 F.2d 1356, 1360 (9th Cir.1981).
 
 
 15
 The disputed debts between Bodenhamer and debtor are "mutual." The retained progress payment was due the debtor as subcontractor from Bodenhamer as general contractor pursuant to rights accrued under the Thurston subcontract. Concomitantly, Bodenhamer's claim against debtor was based on debtor's breach of that same subcontract--by failing to complete performance and failing to pay for all expenses incurred in performance of the contract--in violation of paragraphs 2 and 15 of the agreement. See In re Null's Service, Inc., 109 B.R. 301, 306-07 (Bankr.W.D.Tenn.1990). This mutuality between Bodenhamer and debtor is not destroyed by Amwest's subrogation to Bodenhamer's setoff rights. See Bel Marin Driwall, Inc. v. Grover, 470 F.2d 932, 936 (9th Cir.1972).
 
 
 16
 The second requirement that the claims be "pre-petition" is also met. Debtor's failure to perform under the contract and Bodenhamer's resultant refusal to tender the progress payment both occurred prior to the bankruptcy filing. The district court thus did not err in affirming the bankruptcy court's determination that Bodenhamer had legitimate setoff rights under 11 U.S.C. § 553.
 
 
 17
 Appellant next asserts that Bodenhamer's claim against Debtor is "transferred"--and thus cannot be offset under 11 U.S.C. § 533(a)(2) of the Code--because Bodenhamer lacks direct liability to debtor's subcontractors. Appellant relies on In re J.A. Clark Mechanical, Inc., 80 B.R. 430 (Bankr.N.D.Ohio 1987), which denied an owner's attempted setoff based upon a contractor's failure to pay subcontractors and materialmen. Because the owner was not personally liable to the unpaid claimants, he was not permitted to offset those claims against payments still owing the contractor. Id. at 433.
 
 
 18
 Here, Bodenhamer's liability to the subcontractors unpaid by the debtor is likewise indirect--namely, exposure on its own payment bond and risk of withheld retainage. Further, this liability would probably fail to establish mutuality under Clark. The bankruptcy court and the district court, however, did not predicate Bodenhamer's offset claim on its exposure to the unpaid subcontractors. Rather, Bodenhamer's claim was directly against the debtor for breach of the subcontract provisions under which debtor agreed to make such payments. It was breach of this "direct legal obligation," inuring to the benefit of Bodenhamer, which formed the basis of the offset claim. See In re Flanagan Bros., Inc., 47 B.R. 299, 303 (Bankr.,D.N.J.1985).
 
 
 19
 The prohibition of "transferred" setoffs was designed to prevent "trafficking" in preferred claims. See, e.g., Bel Marin Driwall, Inc., 470 F.2d at 935-36. There has been no allegation that Bodenhamer's aim was to subvert the Act, and in fact no transfer of the asserted setoff right occurred. Id. This claim has not been "transferred" within the meaning of § 553(a)(2).
 
 
 20
 The district court held that, because debtor was in default on the subcontract at the time Bodenhamer withheld the progress fund, debtor never acquired any rights to the fund, and therefore RNB's interest in the fund must be inferior to that of Bodenhamer and thus of Amwest. The district court cited In re Pacific Marine Dredging and Construction, 79 B.R. 924 (Bankr.D.Or.1987) in support of its holding. In Pacific Marine, on similar facts, the court stated:
 
 
 21
 This court agrees with other courts that have found that the contractor's failure to pay for labor and materials is just as much a failure to perform and carry out the terms of the contract as an abandonment of the work.... Due to debtor's breach of contract, the debtor does not have any legal or equitable interest in the fund. Accordingly, the fund is not property of the estate.
 
 
 22
 Id. at 929 (citations omitted). Although we recognize that the existence of a technical breach by the debtor may not in all cases foreclose a debtor's interest in the installment,[1] we do agree that the debtor lacked such an interest here. There is ample support in the record for a finding that debtor's breach was material, and therefore sufficient to suspend Bodenhamer's duty to perform by turning over the progress payment to debtor. We cannot conclude that the district court's ruling on this point was erroneous.
 
 III.
 
 23
 For the reasons stated above, we affirm the district court's decision finding Bodenhamer's setoff valid under 11 U.S.C. § 553, and that such setoff was not improper as a transferred claim. We agree that AAA, and therefore RNB, lacked a contractual right to the withheld payment. However, because the exact amount held by Bodenhamer at the time the bankruptcy petition was filed apparently has not been established, we remand to the district court for determination of the amount due Amwest for the unpaid progress payment.
 
 
 24
 AFFIRMED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 In In re Null's Service, for example, the bankruptcy court found that the debtor did retain some interest in the funds despite its breach--although that interest was inferior to the general contractor's setoff rights. 109 B.R. at 306-07